# EXHIBIT C

```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK


In re:                              :
                                        Docket #1:13-cv-09244-
 IN RE                              : RA-SDA

   ACTOS ANTITRUST LITIGATION       :
                                        New York, New York
                                    : March 29, 2022

------------------------------------ : TELEPHONE CONFERENCE

                       PROCEEDINGS BEFORE
                 THE HONORABLE STEWART D. AARON,
                  UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For All Plaintiffs:        COHEN MILSTEIN SELLERS & TOLL PLLC
                           BY:  AARON JOSEPH MARKS, ESQ.
                           88 Pine Street, #14
                           New York, New York 10005


For Takeda Defendants:     MORGAN LEWIS & BOCKIUS, LLP (PA)
                           BY:  R. BRENDAN FEE, ESQ.
                                MELINA R. DIMATTIO, ESQ.
                                DANIEL P. HUYETT, ESQ.
                           1701 Market Street
                           Philadelphia, Pennsylvania 19103




Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com

Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|-----|-----|-----------|
| None | | | | |

1                           PROCEEDINGS                        3

2                HONORABLE STEWART D. AARON (THE COURT):   This is

3   Magistrate Judge Aaron.  This is the matter In Re ACTOS

4   Antitrust Litigation, Master File Number 13-cv-9244.  This

5   line is being recorded.  I'd like to have the parties

6   identify themselves, please, starting with counsel for the

7   plaintiff.

8                MR. AARON J. MARKS:  Good afternoon, your Honor.

9   This is Aaron Marks on behalf of all plaintiffs.

10               MR. R. BRENDAN FEE:  Good afternoon, your Honor.

11  This is Brendan Fee from Morgan Lewis on behalf of the Takeda

12  defendants.  And along with me are my colleagues, Melina

13  Dimattio and Patrick Huyett.

14               THE COURT:  Good afternoon.  I read the parties'

15  submissions that were filed at ECF 359, 362 and 366.  And it's

16  the plaintiffs' letter motion.  I'm happy to hear from the

17  plaintiff about anything that they want to emphasize or say,

18  I mean, keeping in mind that I've already read the thing and I

19  may have a few questions along the way.  And then, obviously,

20  I'm happy to hear from the defendants next.  So I'll turn the

21  floor over to the plaintiffs' counsel first.

22               MR. MARKS:  Thank you, your Honor.  Again, this is

23  Aaron Marks on behalf of all plaintiffs.  As your Honor is

24  aware from the papers, there are two issues before the Court,

25  each involving email threads and earlier-in-time emails.  And

1                          PROCEEDINGS                    4

2    an email thread is just a collection of emails that has been

3    replied to or forwarded to one another.  They're associated in

4    email software, such as Outlook or Gmail, which your Honor may

5    be familiar with.  Earlier-in-time emails are any email in

6    that thread collection except for the most recent email.

7            And the issue here is that defendants are proposing

8    to produce virtually no earlier-in-time emails or metadata

9    and not include any of those earlier-in-time emails on

10   their privilege log.  We think this severely prejudices

11   plaintiffs, hampers our ability to prosecute the case and

12   is barred by the federal rules, local rules and the Second

13   Circuit's precedents.

14           Unless your Honor would prefer otherwise, I would

15   just being with the privilege log and make a few points.

16   First --

17           THE COURT:  Well, sure.  If you want to start with

18   the privilege log, you can.

19           MR. MARKS:  Certainly, your Honor.  So we have

20   three primary points just to emphasize on the privilege

21   log.  And the first something that we raised in the

22   plaintiffs' briefs -- defendants didn't really respond to

23   it in their papers -- but it's that this is a case where

24   privilege is enormously important.  The allegations at the

25   heart of this case are that defendants filed

```
 1                          PROCEEDINGS              5
 2  misrepresentations with the FDA about patents that they had
 3  rights to, which triggered regulatory and legal
 4  consequences, including litigations, and that that all
 5  delayed the entry of generic competition for their diabetes
 6  drug called ACTOS.
 7          So defendants have understood from the beginning
 8  of this case that litigation, kind of legal facts and
 9  potentially privileged documents were going to be at the
10  center of this.  And they agreed to include on their
11  document custodians a number of attorneys.  And they agreed
12  to that in the discussions over the scope of discovery.
13  The Court also recognized that privilege would be at the
14  heart of this case when it scheduled -- included on the
15  case schedule two separate deadlines for privilege logs, as
16  well as a deadline for defendants to elect their advice-of-
17  counsel defense.  There's a specific deadline when they're
18  going to elect that defense or not; and if they do, there
19  will be a privilege waiver associated with it.  If
20  defendants elect to a privilege, there will be an intense
21  focus on their privilege log because in cases like this
22  when a defendant waives privilege to rely on an advice-of-
23  counsel defense, the parties often dispute what the
24  appropriate scope of that waiver should be.  And plaintiffs
25  are going to have to scrutinize extremely closely every
```

```
 1                          PROCEEDINGS                    6
 2   entry on defendants' privilege log to understand whether
 3   they have appropriately asserted privilege or not.
 4            So privilege is extremely important on this case,
 5   but the second point to underscore -- and I'll make it
 6   brief since your Honor has read the papers -- but
 7   defendants' proposal really makes it impossible to assess
 8   privilege for all of these earlier-in-time emails.  To
 9   assess privilege under the federal rules and the local
10   rules, Second Circuit precedents say you need to know who
11   was involved in the communications.  Defendants aren't
12   going to share that for these earlier-in-time emails.  You
13   also need to know when were the communications sent and
14   what generally were they about.  Defendants aren't
15   disclosing any of that for the earlier-in-time emails.
16   This makes it impossible to assess whether a lawyer was
17   even involved or whether there may have been a third party
18   involved whose presence would break the privilege.  And so
19   we think that it just clearly violates the local rules,
20   federal rules.
21            And that all is driven home in the *Bystolic* case,
22   your Honor, which is the last point I would just touch on.
23   Judge Liman just last year decided in *Bystolic* that -- he
24   rejected the proposal defendants are making here.  And
25   *Bystolic* is another larger antitrust case, also involves a
```

```
 1                        PROCEEDINGS                    7

 2   pharmaceutical product, very similar to here.  And what

 3   Judge Liman held is that each email in an email thread is a

 4   separate communication for which a privilege may or may not

 5   be applicable.  Accordingly, each individual email must be

 6   logged in the thread separately because, otherwise, the

 7   Court would have no way to assess whether those earlier

 8   emails were actually privileged.  This would result in what

 9   another case called stealth claims are privileged.  And if

10   your Honor saw the attachment to our reply brief filed as

11   Exhibit C, that's an example that shows this isn't

12   hypothetical that defendants would be asserting stealth

13   claims of privilege.  In their production there are email

14   threads where the individuals on the topmost thread were

15   not present at all on the earlier threads -- on the earlier

16   emails, I should say.  This would mean that if defendants

17   were to withhold that thread, we would have no idea --

18   plaintiffs and the Court would have no idea that they had

19   withheld earlier-in-time emails involving particular

20   individuals.

21              Ultimately, just to conclude this point, this

22   would take what is the defendants' burden to establish

23   privilege and it would flip it to the plaintiffs first, who

24   would have to challenge vast swaths of these earlier-in-

25   time emails for which we would have no information
```

```
 1                           PROCEEDINGS                    8
 2   disclosed.  And then that would ultimately come to the
 3   Court, which would have to review these documents in
 4   camera.  But that's exactly what Rule 26 seeks to avoid.
 5   The advisory committee notes, Rule 26, says that the reason
 6   a party has to disclose this basic information is so that
 7   the Court can avoid having to review, you know, enormous
 8   tranches of documents in camera.  And so we think the
 9   minimal burden of having to identify this basic
10   information, such as sender, recipient, date will provide
11   an enormous benefit to the parties and the Court as this
12   case goes forward so that we can resolve privilege disputes
13   between the parties without having to burden the Court.
14           Unless the Court has any questions on the
15   privilege log, I would move to the production issue.
16           THE COURT:  Yes, I do have questions.  And what
17   I'd like to do is hear from -- after I ask my questions,
18   hear from the defendants on the privilege log point and
19   then move to the second point and then hear from the
20   defendants.
21           So here's my question:  Judge Liman did not
22   address the local civil rule, right, 26.2C and the
23   accompanying committee note.  And he doesn't get into the
24   issue of, for lack of a better term, trying to reduce the
25   burden on the party asserting the privilege.  So, I mean,
```

```
 1                        PROCEEDINGS                    9
 2  the issue just from -- I mean, the opinion is very short,
 3  or the order is very short -- but you're not suggesting,
 4  are you, that the defendants are precluded from doing a
 5  document-by-document log of every single earlier-in-time
 6  email?  I mean, aren't they allowed, for example, to take a
 7  categorical approach with respect to certain tranches?
 8            MR. MARKS:  Sure, your Honor, I'll take that in
 9  two parts.  So, first on Judge Liman's opinion and Rule 26,
10  I'm not sure if your Honor has it in front of you, but page
11  three of that opinion as it's reproduced in Westlaw, or
12  it's under the heading Four in the opinion, actually does
13  quote Rule 26.2.  It says, "Expressly, Local Civil
14  Rule 26.2 requires that a party asserting privilege in
15  response to a document request provide," and then it sets
16  forth all of the specific information.  So I do think Judge
17  Liman had Rule 26.2 in mind when writing that opinion.  And
18  the ruling on email-by-email --
19            THE COURT:  Right, but he did not -- he's relying
20  on the earlier part of 26.2.  I'm going to pull it up, but
21  does he discuss 26.2-C?  Am I misremembering?
22            MR. MARKS:  You're not misremembering, your Honor;
23  26.2-C is not discussed in that opinion.  But I think --
24            THE COURT:  It's on the next page of the local
25  civil rules.  I'm not suggesting that my colleague, Judge
```

```
 1                        PROCEEDINGS              10
 2    Liman, didn't turn the page; but on the edition that I was
 3    looking at of the local civil rules, it's certainly -- it's
 4    on the next page.  And I don't think they're necessarily
 5    inconsistent.  And although -- because 26.2, the earlier
 6    part of it, A and B, tracks the federal rule; but what the
 7    judges of this court who adopted the local civil rule had
 8    in mind, particularly given the types of litigation that we
 9    have in the Southern District of New York, ways to
10    alleviate burdens and --
11              MR. MARKS:  Absolutely, your Honor.  And I think,
12    just looking at the text of subsection C, which we think is
13    important in this dispute and did bring up in our brief, so
14    subsection C says a few things.  First, it does allow
15    categorical logging.  That's not in dispute.  But it also
16    says that a party, quote, "may object if the substantive
17    information provided by this rule has not been provided in
18    a comprehensible form."  So then the question is well, how
19    do we reconcile those two things?  What does it mean to
20    provide the categorical log but also provide the, quote,
21    "substantive information required by this rule."  And I
22    think the compromise that plaintiffs proposed to defendants
23    here when we were discussing this at first exactly resolves
24    this tension.  So what plaintiffs said to defendants is if
25    you have an email thread where all of the individuals on
```

```
 1                           PROCEEDINGS                    11
 2   the email thread are the same and they're discussing the
 3   same subject matter, then under this rule it seems proper
 4   to provide a single entry for that thread.  Even though
 5   that is a grouping of -- could be 5, 10, 20 documents, 20
 6   emails, it would make sense to group those because the
 7   basis of the privilege is the same.  And that's what the
 8   rules says; it says that you can use a categorical
 9   approach, quote, "when asserting privilege on the same
10   basis."
11           But because the heart of a privilege claim turns
12   on who is involved in the communications, was it a third
13   party, an attorney, somebody else, and also turns on what
14   is the subject of the communication, is it actually a
15   request for legal advice, then when those two things vary,
16   the participants and the subject matter, then it's no
17   longer appropriate to categorically log, and the
18   substantive information required would no longer be
19   provided.
20           And so, from plaintiffs' perspective, that's how
21   these, you know, two kind of somewhat competing parts of
22   subsection C can be resolved.  And, again, plaintiffs are
23   completely amenable to accepting single log entries for
24   threads as long as the individuals on the thread and the
25   subject matter are the same.
```

```
1                         PROCEEDINGS              12
2              THE COURT:  All right, why don't I hear from the
3    defendants?  And as the defendants speak, I'd like to hear
4    their perspective on whether a metadata log could be
5    provided.  As I'm sure everyone's aware, through Outlook
6    one can populate various fields, to, from, date, re.
7    Oftentimes the re isn't illuminating, for lack of a better
8    term, and may need to be supplemented; but it would be a
9    tool that the plaintiffs could use to try to satisfy that
10   part of Local Rule 26.2-C of providing substantive
11   information in a comprehensible form.  So when defense
12   counsel talks, if they could talk to the practicality and
13   the feasibility of a metadata log for privileged documents.
14   I forget who's speaking on behalf of the defendants, but
15   I'm happy to hear from you about the privilege log
16   generally and about the feasibility of a metadata log,
17   please.
18              MR. PATRICK HUYETT:  Yes.  Thank you, your Honor.
19   This is Pat Huyett from Morgan Lewis on behalf of Takeda.
20              So the first thing I'll say is that creating a
21   privilege log, especially in a complex case like this
22   involving thousands of documents, is an incredibly
23   burdensome and expensive exercise.  And the local rules in
24   this court, the federal rules, the case law, the Sedona
25   Principles, they all recognize that, and they all encourage
```

```
 1                         PROCEEDINGS                    13

 2   measures to alleviate some of that burden and expense.

 3            As your Honor noted, Local Civil Rule 26.2-C, it

 4   doesn't just allow for a categorical log; it encourages

 5   parties to create and provide a categorical log.  And it

 6   even says that a categorical log is presumptively proper.

 7   And that's the path that Takeda is proposing to pursue here

 8   with its log.  And so then the question becomes what is

 9   Takeda required to include in its categorical log.  And we

10   think that, you know, there are no rigid requirements on

11   what Takeda has to include in its categorical log.  As your

12   Honor recognized the subsection A-2 of the local rules of

13   26.2 is separate from subsection C allowing for categorical

14   logs.  So a categorical log does not have to provide all of

15   the information listed in subsection A-2-a as plaintiffs

16   claim in their papers on this issue.

17            And so the proper approach, then, for a

18   categorical log is it has to include enough information for

19   the opposing parties to assess the claim of privilege.  And

20   that's the standard from the federal rules.  And we think,

21   you know, in the categorical log context, you know, a

22   defining feature of categorical log is its flexibility, is

23   its efficiency.

24            So here, what Takeda is proposing to do is to

25   provide plaintiffs with enough information in a single log
```

```
 1                          PROCEEDINGS                  14

 2    entry to allow them to assess the claim of privilege,

 3    because that's what's required by the federal rule and

 4    that's what's required by subsection C here.  Plaintiffs

 5    will also have additional information, such as the subject

 6    of the email, the date of the most recent-in-time email and

 7    the participants to that email.  And that information is

 8    enough to allow the plaintiffs to assess the privilege

 9    claim.

10              And it's clear, if you look, actually, at the

11    federal rule and the comments to that rule, that the types

12    of information that plaintiffs claim that they need, they

13    claim presents, you know -- that without this information,

14    it's an impassable, you know, obstacle to assessing the

15    claim of privilege, that's just not borne out in practice

16    and by the rules.  The comments the advisory committee

17    notes to the 1993 amendment to Rule 26 of the federal rules

18    says the following:  "The rule does not attempt to define

19    for each case what information must be provided when a

20    party asserts a claim of privilege or work product

21    protection.  Details concerning time, persons, general

22    subject matter, etc., may be appropriate if only a few

23    items are withheld but may be unduly burdensome when

24    voluminous documents are claimed to be privileged or

25    protected, particularly if the items can be described by
```

```
 1                          PROCEEDINGS                    15
 2   categories."  So here, what this comment is saying is that
 3   this information that plaintiffs claim is absolutely
 4   necessary for them to assess the claim of privilege, that's
 5   nice-to-have information; it's not required information,
 6   it's not absolutely necessary for them to assess the claim
 7   of privilege.  And so, in cases like this one, where the
 8   voluminous documents are claimed to be privileged or
 9   protected, Takeda can proceed under its proposal consistent
10   with the federal rule and the local rule on categorical
11   logging.
12           So, your Honor, I'll address the metadata question
13   that you raised.  And if I understand your question
14   correctly, it's whether -- what are the practicalities of
15   Takeda providing a pure metadata log for the lesser-
16   included emails in the email threads.  And the first thing
17   I'll say --
18           THE COURT:  For privilege I am -- I'm now focusing
19   on the privilege issue, but yes, go ahead.
20           MR. HUYETT:  Understood, your Honor.  The first
21   thing I'll say is I'll just reiterate that plaintiffs don't
22   need that information to assess the claim of privilege.  We
23   will be providing them with the information necessary to
24   assess the claim of privilege as we're required to do under
25   the federal rules and under the local rules.
```

```
 1                     PROCEEDINGS                 16
 2          THE COURT:  Yes, if I can just interrupt you
 3  there?  Because I had experience with this in the SM Kids
 4  matter, which when we get to the next issue, you point out
 5  the protocol that was entered there.  So what happened in
 6  SM Kids is there were some privilege -- the case eventually
 7  settled -- but there were privilege issues, and I had to
 8  review things in camera; and, as you note, the threading
 9  was used.  So unbeknownst to the -- I'm trying to remember
10  who was asserting privilege -- I guess unbeknownst to the
11  plaintiff -- no, actually, I think it was the other way
12  around.  Plaintiff was asserting privilege, and unbeknownst
13  to the defendant, in some earlier-in-time emails there were
14  third parties that were in and out, for lack of a better
15  term, so they weren't on the initial string, they were
16  added, and then they were dropped.  And I found with some
17  of the intermediary emails that there was a waiver because
18  there was a third party on them.  So I ordered those --
19  redactions done, right, so that the -- I guess once the
20  person came on, it was everything that came before because
21  that person would have seen them, was not privileged while
22  things that came after, after it was forwarded and the
23  third party was dropped, I found that privilege stayed.  So
24  it would impose an awfully large burden if I were to permit
25  the threading to be done -- and we're going to get to that
```

```
1                          PROCEEDINGS                      17

2    issue next -- for Takeda lawyers or paralegals, whoever are

3    going to do it, to have to go through and keep an eye out,

4    for lack of a better term, on who all of those intermediary

5    recipients were; whereas, if a metadata log were created of

6    all of the earlier-in-time privileged emails, you wouldn't

7    have to go through the manual process and rely upon

8    someone's eyes to be able to pick up the fact that an

9    interloper, to just use that term, has come into the middle

10   of an email chain and then drops out.  So it would deal

11   with that issue.

12              Sorry for interrupting you.

13              MR. HUYETT:  Oh, no, no problem, your Honor.

14              We have discussed that with -- we have discussed

15   that possibility of trying to create a metadata log or have

16   created a metadata log of the nature that you describe.  And

17   our understanding is that it can be done, but it will still

18   require some manual work, and it will not -- for lack of a

19   better term, it won't be as accurate as one would like.  So

20   we have looked into that, and we --

21              THE COURT:  I didn't understand the accuracy

22   point.  My understanding is the fields are just literally

23   transferred, so whoever is listed in the To and the From

24   and the CC and the BCC, it just populates.  So I'm not sure

25   of your point about accuracy.  Obviously, somebody needs to
```

```
 1                        PROCEEDINGS                 18
 2   go through the subject line to make sure that there's no
 3   privileged information that's set forth in the subject
 4   line, which can happen, I suppose.  But I didn't understand
 5   your accuracy point.
 6             MR. HUYETT:  Well, our understanding is that
 7   sometimes, you know, the automated process for that to the
 8   extent we can do it.  Sometimes it can't always be relied
 9   upon to pick up everything is the accuracy point.
10             THE COURT:  All right.  I mean, look, it is what
11   it is.  I mean, I suppose Outlook isn't infallible, but on
12   the other hand, there's not much to go wrong, it seems to
13   me.  But go ahead.  I interrupted you.
14             MR. HUYETT:  So I would propose or we would
15   propose a more reasonable approach, which we have proposed.
16   And that is where plaintiffs identify emails where they
17   have a reasonable request or reasonable basis for seeking
18   that additional information, we are more than happy to meet
19   and confer with them and to work out a solution.  We don't
20   think that the burden that will be imposed from having to
21   create some sort of log or to go through that process and
22   any manual effort that's required there justifies, you
23   know, the few instances where plaintiffs might seek this
24   information.
25             And I'll also note that one other additional
```

PROCEEDINGS                    19

compromise that we've offered to plaintiffs to assist them
in their review of the log is something that's not required
by the rules at all, but in our experience, plaintiffs
often ask for it, and it is something that can help them to
assess a claim of privilege on the log.  And that is for
each entry on the log where we're logging an email thread,
we will also provide the number of emails in the thread and
the number of pages that the thread consists of.  And what
that does -- and I'm speaking from experience because I've
gone through privilege logs for this purpose before -- is
that where plaintiffs come across entries that they are
particularly interested in, you know, as they're triaging
their privilege log review, as they say, and they come
across an entry that is a thread that is entirely withheld
and they see, for example -- and I actually think to use
one of their exhibits to their reply is helpful.  So
Exhibit C, for example, contains eight emails in the
thread, and it spans 22 pages.  If they come across a
thread like that that is entirely withheld and consists of
eight emails and 22 pages across the thread, then that
gives them more information about how many -- you know,
about sort of the extent of the information that's included
in the document, and that gives them a reasonable basis to
meet and confer with us and seek the additional information

```
 1                           PROCEEDINGS                  20
 2   in the lesser-included emails.
 3           THE COURT:  So let me ask you, I saw a reference
 4   in the submissions to a privilege log protocol.  Where does
 5   that stand?
 6           MR. HUYETT:  The privilege log protocol is fully
 7   negotiated.  And if I'm remembering correctly, I believe
 8   this is the only outstanding issue on that protocol.  And
 9   we actually attached that protocol with a red line to the
10   competing proposals as an exhibit to our opposition.
11           THE COURT:  Okay, so sorry I missed that.  Let me
12   pull it up.
13           Okay, so the red line shows Takeda's markup?
14           MR. HUYETT:  Yes, your Honor.
15           THE COURT:  Okay.  Do plaintiffs -- sorry, were
16   you finished on the privilege log issue?
17           MR. HUYETT:  Yes, your Honor.
18           THE COURT:  All right, do plaintiffs wish to make
19   any other remarks about that?
20           MR. MARKS:  Yes, your Honor, with the Court's
21   indulgence, just a few brief points in rebuttal.
22           THE COURT:  Okay.
23           MR. MARKS:  First, I think with the SM Kids case
24   your Honor hit the nail on the head.  That's perfectly
25   illustrative of the concerns the plaintiffs have here with
```

```
 1                          PROCEEDINGS                 21
```

2  defendants' proposal.  The emails that we attached as

3  exhibits to the reply brief show that in defendants' usual

4  course of business different people come on and off email

5  threads, and this could include third-party interlopers, as

6  your Honor said.  There would be absolutely no way to know

7  whether that was going on under defendants' proposal.  It

8  would inevitably lead to *in camera* review and needless

9  burden on the Court, which we can avoid here.

10          Second, on defendants' burden argument, I

11  understood Mr. Huyett to say that the kind of log that your

12  Honor is proposing, a metadata log populated by Outlook, to

13  use his words, "can be done."  It would require, quote,

14  "some work" manually.  But, you know, I think at the end of

15  the day this is a situation where an ounce of prevention

16  is, you know, a pound of cure.  If defendants can put in,

17  you know, whatever minimal effort it takes to generate that

18  kind of metadata log that gives plaintiffs the information

19  about who sent and received the emails, when they were

20  sent, that kind of thing, that will help avoid substantial

21  burden down the line.

22          Just on that information itself, you know,

23  Mr. Huyett said that it's nice to have, to know who sent

24  and received emails.  I think that, you know, relying on a

25  committee note to the rule which talks about what may be

1                          PROCEEDINGS                    22

2   burdensome in some situations, it can't override what the

3   Second Circuit has said should be included in a privilege

4   log.  And we cited the *Construction Products* case to your

5   Honor -- you saw that in the briefs.  Defendants didn't

6   have a response to it.  The Second Circuit's clear on what

7   should be included in a privilege log and what's needed to

8   assess the claims of privilege, and I think that, you know,

9   your Honor's experience with the *SM Kids* case shows just

10  why that information is required.

11            And, lastly, I would just say that defendants

12  proposal that plaintiffs should, you know, ask for

13  additional information on a case-by-case basis just is not

14  practicable.  There was a suggestion that plaintiffs could

15  somehow triage the entries based on the information

16  included in defendants' log.  That's just not true.  All

17  the defendants would be doing is to say this thread has

18  five emails in it, this has ten.  That's nothing more than

19  telling plaintiffs there is an email that exists which has

20  been withheld.  That tells us nothing about what its

21  subject matter was, who was participating in it, when it

22  was sent.  And that's crucial information.  These threads

23  can involve all sorts of different people coming on and

24  off.  They can span months and months and months.  And so

25  to only log information about the most recent email is

```
 1                        PROCEEDINGS                    23

 2   plainly deficient under all of the authorities; and so we

 3   would request the Court require defendants to produce this

 4   information in their privilege log.

 5             THE COURT:  Okay.  So let's turn to the threading

 6   issue, please.  And I'll hear from plaintiffs' counsel

 7   first.

 8             MR. MARKS:  Thank you, your Honor.  On the

 9   threading production issue, what we understand defendants

10   to be doing here is withholding virtually all of the

11   earlier-in-time emails.  They don't seem to dispute that

12   they're responsive to the negotiated scope of discovery,

13   they don't dispute that they're relevant.  They're simply

14   withholding them.  This has massive consequences for

15   plaintiffs' ability to litigate this case.

16             First and most prominently, it makes searching

17   their documents almost impossible.  And this is in clear

18   contravention of Federal Rule of Civil Procedure 34, which

19   requires that documents be produced as they're maintained

20   in the course of business.  And, again, the advisory

21   committee note there says that if emails are kept in a

22   searchable form, they shouldn't be produced in a way that

23   degrades or eliminates that searchability.

24             Here, defendants' proposal would do just that.

25   And just to take an example, if defendants produced an
```

1                               PROCEEDINGS                    24

2   email thread that had five emails on it; and say the first

3   and second email were from the CEO of the company, but the

4   CEO gets dropped from the thread, plaintiffs would have

5   absolutely no way to locate those earlier emails from the

6   CEO of the company even though they could be crucially

7   important to the case.  So running a search for all emails

8   from the CEO would not turn up those earlier emails.  And

9   the same goes on the To side.  It comes impossible to

10  actually search for emails in this case, which is a hugely

11  important task as we proceed through discovery.  For

12  example, your Honor may be familiar with, you know, a

13  routine task ahead of depositions is just to pull all of

14  the witness's emails and read through those.  And, you

15  know, it's something that's crucially important to do to

16  understand what happened in the case, who was discussing

17  what with whom and when.  Defendants' proposal would just

18  make that impossible.  And given that plaintiffs are the

19  ones with the burden to prove the elements of this case, I

20  think this severely prejudices us as we move forward

21  through discovery and eventually to trial.

22          Now, defendants' only real argument for not

23  producing this information is that they say it's redundant.

24  They say that, you know, they're not, quote, "withholding

25  any unique content."  We think that's just plainly not true

```
 1                        PROCEEDINGS                    25
 2  based on the face of the documents.  We attached exhibits
 3  to each of our reply briefs, and if your Honor looks at the
 4  first email that was sent in that thread, which this is a
 5  thread defendants produced, the first email identifies a
 6  sender but does not show who actually received the email.
 7  And this is information which we need to understand what
 8  happened in this case.  It's information that would be
 9  visible if defendants produced these emails as they're
10  stored in the ordinary course of business, along with the
11  metadata.  But we simply don't have that information.
12  We're also never going to know who was bcc'd or blind
13  carbon copied on emails because that information also is
14  never visible in the way defendants intend to produce these
15  email threads.
16            We think that these email threads just are not
17  actually redundant of what defendants are withholding, and
18  there's crucial information that we're missing, even beyond
19  the searchability problem, which itself is a huge issue.
20  So plaintiffs' position is, you know, these are not
21  redundant.  It's visible from the face of the documents.
22  But even if they are redundant, if defendants are right,
23  well, that's barred by the ESI order in this case.
24  Plaintiffs and defendants negotiated a stipulated order
25  governing ESI in this case back in 2015, and defendants
```

| 1 | PROCEEDINGS 26 |

2  never raised email threading back then, and it took

3  plaintiffs frankly completely by surprise when defendants

4  told us they were doing this.  And that's because the ESI

5  order says that all responsive ESI is going to be produced

6  along with all metadata.  It also says that there's one way

7  that a party can deduplicate documents if they're exact

8  duplicates using something called a hash function, and

9  which does not apply here.  So, you know, we think these

10  are not redundant documents.  We think that there's unique

11  information we're missing.  And even if defendants are

12  right, this is barred by the ESI order.

13           I would just conclude by saying that the earlier-

14  in-time emails are documents defendants already have.

15  We're not asking them to create something new to produce

16  here.  And their position is that they've already reviewed

17  these.  They say, "We've already taken a look at these, and

18  we understand that the body text of these emails is

19  included in the threads we're going to produce."  And so if

20  they've already reviewed them, they should know which ones

21  are privileged, which ones are not, and they should be able

22  to simply produce them.  It should be a push of a button.

23  So we think the burden is really incredibly low here, given

24  that defendants have these and have reviewed them.  And,

25  you know, for those reasons, we would ask your Honor to

PROCEEDINGS                    27

 1  require that defendants produce those responsive and

 2  relevant ESI that they maintain they're going to withhold.

 3          THE COURT:  All right.  Let me hear from defense

 4  counsel.  And one of the things I would like to hear about

 5  or have you respond to is the precedent, for lack of a

 6  better term, that's been provided to me has been in the

 7  form of protocols.  And it certainly is the case that there

 8  are protocols out there, including *SM Kids* and others,

 9  where parties have agreed to so-called email threading; and

10  under Rule 29, as we know, parties can stipulate to

11  discovery methods and that kind of thing.  But I haven't

12  seen anything where a Court has imposed it in circumstances

13  where, you know, my review of the protocol that was entered

14  back in March of 2015 certainly is silent about threading.

15  But I think that threading is inconsistent with the spirit

16  of it.  But why don't you comment on that as you make your

17  argument, please?

18          MR. HUYETT:  Sure, your Honor.  Pat Huyett again.

19          So email threading, it's common and well accepted.

20  It's usually not controversial.  As you mentioned, you

21  often see parties agree to it in the stipulated ESI

22  protocols.  But we couldn't find any cases where this issue

23  was actually litigated, and plaintiffs didn't cite any.  So

24  that's likely because email threading benefits both

```
 1                        PROCEEDINGS                    28
 2    parties; it benefits plaintiffs and it benefits defendants.
 3    It does so mainly by reducing the document volume, we have
 4    found, by about 25%.  And so that helps both sides because
 5    it means fewer documents to store, fewer documents to
 6    review, and for defendants fewer documents to produce.  And
 7    in our experience plaintiffs don't usually seek to compel
 8    document dumps of additional information that they already
 9    have.
10            We agree that the ESI protocol is silent on email
11    threading.  So in that case, the federal rules govern
12    whether email threading is proper.  And the federal rules
13    allow for email threading.  And our position is you start
14    at Rule 1, which says that the rule should be construed to
15    secure the just, speedy and inexpensive determination of
16    every action and proceeding --
17            THE COURT:  I have to admit, counsel, when you
18    start with Rule 1 -- but go ahead.  That's -- in baby judge
19    school we were told, "Always refer to Rule 1 if you've got
20    nothing else."  But why don't you go onto your next rule?
21            MR. HUYETT:  Okay, well, maybe my next rule will
22    be more compelling, your Honor.  So Rule 34(b)(2)(E)
23    says -- and plaintiffs cite this rule -- it says, "A party
24    must produce ESI in a form in which it is ordinarily
25    maintained or in a reasonably usable form or forms."  And
```

```
 1                          PROCEEDINGS                    29
 2   the key is the latter part of that statement, "in a
 3   reasonably usable form."  I heard Mr. Marks say multiple
 4   times that by using email threading we have made it almost
 5   impossible for plaintiffs to search the documents.  And
 6   that's just not true.  All of the emails that we have
 7   produced and will produce are fully text searchable,
 8   meaning plaintiffs can go into their database, they can
 9   take a particular witness's name, they can punch that
10   witness's name into the database and pull up all of the
11   emails that hit on that witness's name.  So to be sure,
12   they will not have the full search capabilities that they
13   want and seem to think they're entitled to, but the rules
14   don't require Takeda to provide or produce the documents to
15   plaintiff in a manner, you know, that allows them to search
16   as they would like to.  We've provided them in a fully
17   searchable format.
18           And, also, the information that they claim to be
19   precluded from viewing, the metadata, most of that
20   information is in the email thread itself.  So they can
21   pull up an email thread and they can look and they can see
22   the date the email was sent, the sender, the recipients,
23   and other information like that.
24           So our position is that it is reasonable and
25   proportionate to plaintiffs' needs here for us to proceed
```

```
 1                        PROCEEDINGS                    30
 2   with email threading.  And in instances where plaintiffs
 3   feel that they need information that they're missing, we
 4   are happy to meet and confer with them and consider any
 5   reasonable requests for that information.  And we actually
 6   think that the exhibits that they've attached to their
 7   reply highlight the reasonableness of our position.  So
 8   plaintiffs have attached several exhibits they claim show
 9   their missing critical information.  But in the vast
10   majority of the emails produced they will have all of the
11   information they're looking for in the email thread itself.
12   And in those select instances in which some of that
13   information is missing and plaintiffs feel it's important
14   to their case to have, Takeda is happy to consider
15   reasonable requests for that information.  And we think
16   that's the reasonable and proportionate solution, not the
17   wholesale production of the tens of thousands of earlier-
18   in-time emails.
19             THE COURT:  So the burden on Takeda of producing
20   these emails in native format, all of the emails that are
21   responsive, not just the threaded ones, isn't significant
22   on the front end, for lack of a better term.  In other
23   words, I mean, obviously, it will take time for it to run,
24   but the emails will be deduped and downloaded to presumably
25   a pst database and then sent out for production.  It's
```

PROCEEDINGS                    31

1

2   essentially a, for lack of a better term, a ministerial

3   process, right?  Because in order to create the threaded

4   version, you had to have a population of emails that you

5   were using to conduct the threading, am I right about that?

6              MR. HUYETT:  Yes, that's correct, your Honor.

7              THE COURT:  So the efficiencies come in, for lack

8   of a better term, on the back end when you're dealing with

9   the documents?

10             MR. HUYETT:  Yeah, I think so.  But I would also

11  add that so on the front end but before producing those

12  documents, there would be a fair amount of manual review

13  that would have to go into the documents to ensure, you

14  know, for example, consistency in privilege redactions

15  across threads.  You know, that's one of the benefits of

16  email threading is that it allows for that type of

17  consistency rather than, you know, potentially having

18  situations where some information is redacted in one

19  instance but not redacted in another.  I know that that's a

20  situation I've encountered quite frequently.  And it

21  creates a tremendous burden and cost on defendants in the

22  form of the manual review and checks that have to go into

23  that.

24             THE COURT:  And looking at 34(b)(2)(E)(ii), which

25  is what you focused on, it says, "Unless otherwise

```
 1                        PROCEEDINGS                   32
 2   stipulated or ordered by the Court, these procedures apply
 3   to producing documents or electronically stored
 4   information."  And you read from (ii) which says, "If a
 5   request does not specify a form for producing
 6   electronically stored information, the party must produce
 7   it in the form or forms in which it ordinarily is
 8   maintained or a reasonably usable form or forms."  But the
 9   ESI protocol from back in March of 2015, ECF 193, talks
10   about production of ESI.  And I think your adversary's
11   position is that it doesn't say you get to only produce
12   some of it.  The thread is -- so they would argue that it's
13   otherwise stipulated -- and I suppose this was so ordered
14   by Judge Abrams -- so not only is it stipulated, it's also
15   ordered by Judge Abrams.  How do you respond to that?
16              MR. HUYETT:  Well, your Honor, I believe that
17   plaintiffs and Takeda are in agreement on the applicability
18   of the Rule 34 provision that you cited.  If I'm
19   remembering correctly, the plaintiffs actually cite that
20   provision in their letter motion.  They say, "The federal
21   rules require that ESI be produced in the form in which it
22   is ordinarily maintained or in reasonably usable form."  So
23   I'm not -- I don't have the ESI protocol directly in front
24   of me right now, but it seems that plaintiffs and Takeda
25   are in agreement on the applicability of that rule.
```

```
 1                        PROCEEDINGS                    33

 2           THE COURT:  Yes, but the plaintiffs like what's in

 3  the ESI protocol.  And they're arguing that what you're

 4  arguing for is inconsistent with it.

 5           MR. HUYETT:  We don't think that what we're doing

 6  is inconsistent with the ESI protocol.  The ESI protocol is

 7  silent on the question of email threading.  So, in that

 8  case, what we did was we followed the federal and the local

 9  rules, and Rule 34 permits Takeda to produce the documents

10  to plaintiffs in a reasonably usable form.  So we took the

11  efficient proportionate approach that's fully consistent

12  with the rules.

13           THE COURT:  All right.  Sorry, did you have other

14  points you wanted to make?

15           MR. HUYETT:  No, that's it, your Honor.  Thank

16  you.

17           THE COURT:  Okay.  Any additional comment from

18  plaintiffs?

19           MR. MARKS:  Very quickly, your Honor.  On the ESI

20  protocol, just to make sure plaintiffs' position is

21  understood, we do think the ESI protocol addresses this.

22  We do like it, as your Honor said.  I have a copy in front

23  of me, and it says in Section F-3-a, which I believe we

24  cited in our opening brief, quote, "All responsive ESI

25  except that which is produced in native format should be
```

```
 1                         PROCEEDINGS                    34
 2   produced in black and white," and then it goes on to
 3   specify exactly how.  But all responsive ESI should be
 4   produced.  It also says, quote, "Each of the metadata and
 5   coding fields set forth in Exhibit 1 which can be extracted
 6   from a document shall be produced for that document."  So
 7   we think the ESI protocol does set forth what's required
 8   here.  It requires the production of all responsive ESI and
 9   metadata, including those earlier-in-time emails.  And it
10   would be perfectly acceptable to plaintiffs to read Rule 34
11   that say and saying it's been resolved by court order.  The
12   reason that we referred to the rest of the rule in our
13   letter was in case your Honor didn't think the ESI protocol
14   had resolved it.  We think just under the rule, as well,
15   this information has to be produced.
16             I did not hear any response to the advisory
17   committee note which says, quote, "If the responding party
18   ordinarily maintains the information in a way that makes it
19   searchable by electronic means, it should not be produced
20   in a form that removes or significantly degrades this
21   feature."  And, you know, although counsel has said that
22   it's, quote, "common and well accepted" to do what they're
23   doing here, the only thing they've ever cited for that is
24   their own representation in an email.  They haven't cited
25   any cases or authorities saying that this is common or well
```

```
 1                        PROCEEDINGS                  35
 2  accepted.  We don't think it is, and certainly plaintiffs
 3  don't accept it here.
 4          Lastly, just on the compromise or half-measures
 5  that I would say defendants have proposed, first on can we
 6  search the current emails they've produced, while we can
 7  search for the topmost email on the thread, that doesn't
 8  allow us to search the vast majority of emails in the
 9  thread.  So to search -- you know, if I -- just to use the
10  earlier example -- would like to search for emails from the
11  CEO, I am not going to be able to do that for any emails
12  that are not the most recent in the thread because
13  defendants are withholding those for themselves.
14          THE COURT:  I think what he's saying is you could
15  search for the person's name.
16          MR. MARKS:  So a --
17          THE COURT:  The way that you want to do it is to
18  search for the -- run a search through the fields of
19  sender/recipient.  What he's saying is the person's name
20  will be in there because it will be in the middle of the
21  chain.  And then, yet, you're going to have to go and hunt
22  down.  It's certainly not going to be as easy for you to
23  create -- I remember in the old days when I practiced, I'd
24  want to get from the paralegal through the relativity
25  database the To, the From and the cc and bcc, and then the
```

```
 1                          PROCEEDINGS                    36
 2   separate thing was the dimensions.  This would be --
 3   somebody would have to go through every time the name is
 4   mentioned and see in the body of a lesser-included email
 5   whether the person was a sender or recipient.  So it adds a
 6   layer of work for you.
 7             MR. MARKS:  Exactly, your Honor.  It adds a layer
 8   of work which the federal rules say should not be added.
 9   But also, more importantly, I think it's just not possible,
10   despite what defendants have said.  We attached Exhibit C
11   to our reply brief, which shows an email which doesn't
12   actually display the recipients in the way defendants have
13   produced it.  And, in candor, your Honor, having helped
14   prepare our briefing, I can say, you know, I think we had
15   about two or three days, including the weekend, to do that;
16   and we very easily were able to find those kinds of
17   problems in defendants' production.  They're likely
18   pervasive.  And so we think that, you know, to search for
19   somebody's email address or their name, which it could be
20   either -- we don't know exactly how it would be presented
21   in the document.  There will be many, many instances where
22   the recipient is actually not included in the text of what
23   defendants have produced.  And so we do need that metadata
24   and earlier email to be able to search it at all.  We'll
25   also never have bcc's.  They're never visible in what
```

```
 1                         PROCEEDINGS                      37
 2   defendants have produced.  But that information can be
 3   crucially important to find out who was involved in, you
 4   know, the communications in this case.
 5             And so I think your Honor had it exactly right
 6   when you said it's essentially a ministerial process to
 7   take these emails that defendants claim to have already
 8   reviewed in order to verify that they're included in the
 9   latest threads that they've produced and to just simply
10   produce them.  We think that the burden here is very low.
11   And without having the ability to effectively search
12   through emails, plaintiffs will be severely prejudiced in
13   our ability to prosecute this case as we go forward.  So we
14   would request that the Court require defendants to produce
15   the earlier-in-time emails and metadata.
16             THE COURT:  All right, well, I'm going to noodle
17   this a bit, and I'll issue a written order -- keeping track
18   of what days -- tomorrow.
19             Anything else the parties would like to raise?
20             MR. HUYETT:  Just one last thing, your Honor, if
21   you don't mind?
22             THE COURT:  And who's this speaking?  Sorry.
23             MR. HUYETT:  This is Pat Huyett from Morgan Lewis
24   on behalf of the Takeda --
25             THE COURT:  Yes.  Go ahead.
```

```
 1                        PROCEEDINGS                38
 2              MR. HUYETT:  Yes, your Honor, just one last thing.
 3    Going back to the privilege log issue, the plaintiffs have
 4    repeatedly referred to the Second Circuit law that they
 5    claim requires this information to be included in the
 6    privilege log.  And I just wanted to address that case
 7    briefly.  So that case, which is from 1996, does not
 8    address the issue here at all.  The Court there articulated
 9    what should be included in the traditional document-by-
10    document privilege log that was at issue in that case.
11    Here the issue is what Takeda must provide in its
12    categorical privilege log, which is an issue not at all
13    addressed in this case.  And it's addressed by the Local
14    Rule 26.2-C, which we discussed earlier.  And so I just
15    wanted to address that case briefly, your Honor.
16              THE COURT:  Okay.  Thank you.
17              So I thank counsel for their excellent argument.
18    And, as I said, I'll issue an order tomorrow morning.
19              MR. MARKS:  Thank you, your Honor.
20              MR. HUYETT:  Thank you, your Honor.
21              THE COURT:  This matter is adjourned.  Thank you.
22              (Whereupon, the matter is adjourned.)
23
24
25
```

39

1

2

3                    C E R T I F I C A T E

4

5         I, Carole Ludwig, certify that the foregoing

6 transcript of proceedings in the case of In re ACTOS

7 Antitrust Litigation, Docket #13-cv-09244-RA-SDA, was

8 prepared using digital transcription software and is a true

9 and accurate record of the proceedings.

10

11

12

13 Signature_____*Carole Ludwig*_____

14                    Carole Ludwig

15 Date:    April 14, 2022

16

17

18

19

20

21

22

23

24

25