**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| IN RE ACTOS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>END-PAYOR ACTIONS | Master File No. 1:13-cv-09244-RA-SDA |
|---|---|

**END-PAYOR PLAINTIFFS' RESPONSE TO TAKEDA'S OBJECTION TO**
**AUGUST 9, 2024 REPORT AND RECOMMENDATION RECOMMENDING**
<u>**CERTIFICATION OF THE END-PAYOR CLASS**</u>

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

STANDARD OF REVIEW ............................................................................................ 2

ARGUMENT .................................................................................................................. 2

I.     THE R&R APPLIES THE PROPER STANDARD GOVERNING RULE 23 MOTIONS
       ...................................................................................................................... 2

II.    THE R&R CORRECTLY CONCLUDES THAT THE COURT HAS JURISDICTION
       OVER TAKEDA ...................................................................................................... 4

       A.     Takeda Has Not Established That New York Law Applies. ................................ 6

       B.     Takeda's *BMS* Arguments Are Meritless. ........................................................ 7

              1.     Takeda Cites No Case in Disagreement with the R&R. ............................ 7

              2.     Takeda Offers No Reason to Conclude Absent Members Are
                     Parties Required to Establish Personal Jurisdiction Over Takeda. ............. 9

              3.     Takeda's Newly Found "Substantive" Rights Are Not Abridged. ............ 13

       C.     Personal Jurisdiction Over Takeda Exists Even If the Court Were to
              Analyze the Claims of Absent Class Members ........................................................ 13

              1.     Takeda Expressly Admitted Personal Jurisdiction in Its Answer. ............. 13

              2.     Takeda Has Never Pleaded or Filed a Motion Objecting to
                     Personal Jurisdiction. ................................................................................... 15

              3.     Evidence of Record Establishes Specific Jurisdiction for All Class
                     Member Claims Alike. ................................................................................... 16

III.   THE R&R CORRECTLY CONCLUDED THAT EPPs' MOTION FOR CLASS
       CERTIFICATION SHOULD BE GRANTED .................................................................. 16

       A.     The R&R Correctly Held the Common Issues of Violation, Injury, and
              Aggregate Damages Predominate .......................................................................... 17

              1.     The R&R Properly Applied the Predominance Standard, Which
                     Takeda Disregards ....................................................................................... 17

              2.     Takeda Does Not Dispute That Violation, Injury, and Damages
                     Can Be Fairly Adjudicated Class-Wide. ...................................................... 18

i

        3.     Takeda's Class Membership Concerns Are Meritless ...............................19

B.    The R&R Correctly Understood That the Second Circuit Rejects Administrative Feasibility At Class Certification....................................................21

CONCLUSION ........................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Am. Pipe & Const. Co. v. Utah*,
    414 U.S. 538 (1974)..................................................................................................... 14

*Chizniak v. CertainTeed Corp.*,
    No. 1:17-CV-1075 (FJS/ATB), 2020 WL 495129 (N.D.N.Y. Jan. 30, 2020)........................... 9

*Choi v. Kimberly-Clark Worldwide, Inc.*,
    2019 WL 4894120 (C.D. Cal. Aug. 28, 2019)........................................................................ 13

*Cont. Marine Carriers, Inc. v. Abbott Lab'ys, Int'l*,
    1993 WL 106374 (S.D.N.Y. Apr. 6, 1993) ............................................................................. 15

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) .................................................................................................... 19

*Curley v. Brignoli, Curley & Roberts Assocs.*,
    915 F.2d 81 (2d Cir. 1990) ..................................................................................................... 11

*Daou v. BLC Bank, S.A.L.*,
    42 F.4th 120 (2d Cir. 2022) ................................................................................................... 16

*DeCoursey v. Murad, LLC*,
    673 F. Supp. 3d 194 (N.D.N.Y. 2023)................................................................................. 7, 8

*Diverse Partners, LP v. Agribank, FCB*,
    2019 WL 4305008 (S.D.N.Y. Sept. 11, 2019)....................................................................... 21

*Fifth Third Mortgage Co. v. Chicago Title Ins. Co.*,
    692 F.3d 507 (6th Cir. 2012) .................................................................................................... 1

*Fischer v. Fed. Express Corp.*,
    42 F.4th 366, 374 (3d Cir. 2022) .................................................................................... 5, 8, 13

*George v. Prof'l Disposables Int'l, Inc.*,
    221 F. Supp. 3d 428, (S.D.N.Y. 2016) ..................................................................................... 2

*Government Employees Health Association v. Actelion Pharmaceuticals Ltd.*,
    No. CV GLR-18-3560, 2024 WL 4122123 (D. Md. Sept. 6, 2024)........................................ 17

*Hicks v. Houston Baptist Univ.*,
    2019 WL 96219  (E.D.N.C. Jan. 3, 2019) .............................................................................. 13

*Hines v. Equifax Info. Servs. LLC*,
   No. 19-CV-6701 (RPK) (JAM), 2024 WL 4132333 (E.D.N.Y. Sept. 10, 2024) ............. 8, 9, 10

*Hunter v. Time Warner Cable*,
   2019 WL 3812063 (S.D.N.Y. Aug. 14, 2019) ........................................................................ 21

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ........................................................................ 18

*In re MF Global Holdings Ltd. Inv. Litig.*,
   310 F.R.D. 230 (S.D.N.Y. 2015) .......................................................................................... 4

*In re Namenda Indirect Purchaser Antitrust Litig.*,
   338 F.R.D. 527 (S.D.N.Y. 2021) .......................................................................................... 4

*Krumm v. Kittrich Corp.*,
   2019 WL 6876059 (E.D. Mo. Dec. 17, 2019) ...................................................................... 13

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
   897 F.3d 88 (2d Cir. 2018) ....................................................................................... 10, 11, 12

*Lyngaas v. Curaden Ag*,
   992 F.3d 412 (6th Cir. 2021) ......................................................................................... passim

*Martinenko v. 212 Steakhouse, Inc.*,
   2023 WL 2919766 (S.D.N.Y. Apr. 12, 2023) ........................................................................ 4

*Martinez v. JLM Decorating, Inc.*,
   No. 20-CV-2969 (RA), 2024 WL 1193605 (S.D.N.Y. Mar. 20, 2024).................................. 2

*Mason v. Lumber Liquidators, Inc.*,
   2019 WL 2088609, at *4 (E.D.N.Y. May 13, 2019) ............................................................ 15

*Moll v. Telesector Res. Grp., Inc.*,
   94 F.4th 218 (2d Cir. 2024) ................................................................................................. 15

*Mussat v. IQVIA, Inc.*,
   953 F.3d 441 (7th Cir. 2020) ......................................................................................... passim

*Nelipa v. TD Bank, N.A.*,
   2024 WL 3017141 (E.D.N.Y. June 17, 2024) ...................................................................... 4

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*,
   484 U.S. 97 (1987).............................................................................................................. 7

*Pichardo v. Carmine's Broadway Feast Inc.*,
   No. 15-CV-3312 (RA), 2016 WL 5338551 (S.D.N.Y. Sept. 23, 2016) .................................. 2

*Samson v. United Healthcare Servs., Inc.*,
  2024 WL 866815 (W.D. Wash. Feb. 29, 2024) ...................................................................... 13

*Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*,
  No. 23-10726, 2024 WL 3738048 (5th Cir. Aug. 9, 2024) ..................................................... 15

*Sibbach v. Wilson & Co.*,
  312 U.S. 1 (1941) ................................................................................................................... 13

*United Airlines, Inc. v. McDonald*,
  432 U.S. 385 (1977) ............................................................................................................... 14

*Vega v. Semple*,
  2024 WL 2941657 (D. Conn. June 11, 2024) .......................................................................... 4

**Statutes**

28 U.S.C. § 1332 ............................................................................................................................. 7

28 U.S.C. § 636 ............................................................................................................................... 2

**Other Authorities**

1 McLaughlin on Class Actions § 4:2 (20th ed.) .......................................................................... 21

D. Wilf-Townsend, Did *Bristol-Myers Squibb* Kill the Nationwide Class Action?,
  129 Yale L.J. Forum 205 (2019) .............................................................................................. 8

## INTRODUCTION

After rigorously analyzing voluminous legal briefing, delving into hundreds of pages of expert reports, and conducting an all-day hearing including live witness testimony, Magistrate Judge Aaron issued a thorough, 61-page Report and Recommendation ("R&R")[1] recommending that this Court grant End-Payor Plaintiffs' ("EPPs'") motion for class certification. The R&R is grounded firmly in Second Circuit precedent, and its conclusions are indisputably correct. Nonetheless, Takeda responds with a scattershot attack on Magistrate Judge Aaron's reasoning, assailing him for failing to understand and apply the appropriate legal standards. Nonsense. "When a party comes to us with nine grounds for reversing[], that usually means there are none." *Fifth Third Mortgage Co. v. Chicago Title Ins. Co.*, 692 F.3d 507, 509 (6th Cir. 2012).

Takeda's objections fail. *First*, the notion that the 61-page R&R failed to conduct the necessary "rigorous analysis" is belied by the face of the document and depth of its analysis. *Second*, Takeda's gambit to impose a novel personal-jurisdiction requirement over absent class members lacks any basis in law, would buck the prevailing consensus of federal courts, and would hamstring the viability of class actions—in clear contravention of Second Circuit guidance hailing Rule 23's salutary effects on judicial economy. *Third*, Takeda's quarrels with the R&R's predominance findings are baseless; Magistrate Judge Aaron examined the issues in meticulous detail and concluded, as have many courts in similar EPP antitrust cases, that the common issues predominate. *Lastly*, Takeda invokes a nebulous due process right to challenge class membership; but courts hold the opposite: there is no such right where, as here, damages are determined in the aggregate and thus the defendant's property is unaffected by determinations of class membership.

---

[1] The R&R totaled 80 pages; 18 of those pages addressed the Direct Purchaser class specifically.

**STANDARD OF REVIEW**

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "Where a party timely objects to a Report and Recommendation, the district court reviews those portions of the report to which the party objected *de novo*." *Pichardo v. Carmine's Broadway Feast Inc.*, No. 15-CV-3312 (RA), 2016 WL 5338551, at *1 (S.D.N.Y. Sept. 23, 2016) (Abrams, J.). "To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Martinez v. JLM Decorating, Inc.*, No. 20-CV-2969 (RA), 2024 WL 1193605, at *2 (S.D.N.Y. Mar. 20, 2024) (Abrams, J.); *Talukder v. New York State Dep't of Corr. & Cmty. Supervision*, No. 22-CV-1452 (RA), 2023 WL 3675920, at *3 (S.D.N.Y. May 26, 2023) (same) (Abrams, J.). "To the extent. . . that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Martinez*, 2016 WL 127587, at *3 (citation omitted).

Furthermore, "[i]t is improper for an objecting party to attempt to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge." *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 433 (S.D.N.Y. 2016) (citation omitted) (Abrams, J.).

**ARGUMENT**

**I.    THE R&R APPLIES THE PROPER STANDARD GOVERNING RULE 23 MOTIONS**

Takeda briefly challenges the legal standard set forth by the R&R, claiming that (1) the decision was pervaded by a "liberal" standard with a preference for granting certification, and (2) such a standard lacks grounding in the law. Obj., at 6-8. Each of those propositions is wrong. To

start, Takeda pretends that Magistrate Judge Aaron ignored the Supreme Court's holdings in *Wal-Mart*[2] and *Comcast*[3] that require a "rigorous analysis" at class certification. Obj., at 7. In truth, *Wal-Mart* is the very first case cited in the R&R's legal standard section. R&R, at 12. The R&R recognized that a "rigorous analysis" is required, and it is the movant's burden to "affirmatively demonstrate his compliance with the Rule." *Id.* at 13 (citing *Wal-mart* and *Comcast*). There can be no question that the rigorous analysis standard was applied here: the Magistrate Judge delved into hundreds of pages of expert reports and voluminous legal briefing, conducted an all-day hearing, and issued a thorough 61-page opinion.

Instead of engaging with what the R&R actually said, Takeda gloms onto the following lone case quotation at the end of the legal standard section: "The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification."[4] Takeda disingenuously charges that this single quotation, buried in the legal standard section, forms the "foundation" of the R&R. Obj., at 6. Not so. Rather, as stated above, Magistrate Judge Aaron applied the operative class-certification standards set forth by the Supreme Court and which Takeda agrees govern. Accordingly, this Court can simply find—as Magistrate Judge Aaron's thorough R&R did—that a rigorous analysis confirms that the requirements of Rule 23 are satisfied.

Moreover, the citation with which Takeda takes umbrage is well-supported in the law—so much so that courts have deemed it "beyond peradventure." *Supra* n.4. Literally dozens of district court opinions have reaffirmed the Second Circuit's instruction to interpret Rule 23 liberally rather

---

[2] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).
[3] *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).
[4] R&R, at 13 (quoting *Pichardo*, 2016 WL 4379421, at *4).

than restrictively.[5]  Takeda argues that, in 2003, Rule 23 was amended in a way that "rejected" the Second Circuit's standard (a sea change that apparently escaped the dozens of judges that continue to apply the standard).  Of course, Takeda cites nothing from the Second Circuit for this claim.  It is baseless.  As evidenced by panoply of case-law that continues to rely on it, the liberal standard plainly remains the law of this Circuit.[6]  Indeed, the Second Circuit has very recently declined to reconsider a district court opinion relying on the standard—thus implicitly reaffirming its vitality.[7] And for good reason: "The Second Circuit has directed courts to adopt a liberal interpretation of Rule 23 in order to maximize the benefits to both private parties and to the public provided by class actions."  *In re MF Global Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 235 (S.D.N.Y. 2015).

Lastly, Takeda waived this argument.  The EPPs' memorandum in support of their motion for class certification contained a section titled: "The Liberal Class Certification Standard Is Well Established."  ECF No. 587 at 14.  Takeda's response brief ignored this point and did not dispute it when addressing the relevant legal standard.  ECF No. 600 at 5.  For this additional reason, the Court should disregard Takeda's baseless objections to the well-reasoned R&R.

## II.    THE R&R CORRECTLY CONCLUDES THAT THE COURT HAS JURISDICTION OVER TAKEDA

Takeda submitted and maintained false patent information with the FDA to execute a "settlement strategy" to coerce generic manufacturers to end New York patent litigation and accept

---

[5] *E.g.*, *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 544 (S.D.N.Y. 2021) (McMahon, C.J.); *Nelipa v. TD Bank, N.A.*, 2024 WL 3017141, at *10 (E.D.N.Y. June 17, 2024); *Vega v. Semple*, 2024 WL 2941657, at *7 (D. Conn. June 11, 2024); *Gonzalez v. Hanover Ventures Marketplace LLC*, 2024 WL 1157074, at *3 (S.D.N.Y. Mar. 18, 2024); *Martinez v. JLM Decorating Inc.*, 2024 WL 553553, at *3 (S.D.N.Y. Jan. 2, 2024); *Martinenko v. 212 Steakhouse, Inc.*, 2023 WL 2919766, at *4 (S.D.N.Y. Apr. 12, 2023); *Vecchio v. Quest Diagnostics, Inc.*, 2023 WL 2842702, at *4 (S.D.N.Y. Apr. 7, 2023).

[6] As a technical matter, it remains the standard unless "overruled either by an en banc panel of our Court or by the Supreme Court."  *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004).

[7] *Watson v. Manhattan Luxury Autos., Inc.*, No. 20-cv-4572, 2022 WL 4586407, at *7 (S.D.N.Y. Sept. 29, 2022) (granting class certification and noting that courts give Rule 23 a "liberal rather than restrictive construction"); *id.*, ECF No. 213 (Jan. 25, 2023) (Rule 23(f) petition denied by Second Circuit).

New York licenses that required delaying their market entry entries nationwide—giving rise to EPPs' antitrust injury.[8]  Not surprisingly, Takeda's operative Answer—to this day—"admit[s] that personal jurisdiction exists in this case."  Answer, ¶ 12, ECF No. 279.  But a decade into this litigation, in opposition to EPPs' Rule 23 motion, Takeda raised for the first time an unpled purported personal jurisdiction defense, arguing that EPPs failed to meet their burden of showing that *unnamed* class members established personal jurisdiction over Takeda.

The R&R correctly concluded that EPPs have no such burden. R&R, at 27-28 (concluding that "the named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so.") (internal  quotations and citations omitted).[9]  The R&R's conclusion was based on its agreement with the reasoning of the three Courts of Appeals that have addressed the issue, which hold that *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255 (2017), is limited to *named* parties and does not extend to absent class members in federal class actions.  *See Fischer v. Fed. Express Corp*., 42 F.4th 366, 374 (3d Cir. 2022) ("[C]ourts have considered absent class members in Rule 23 suits not to be 'parties' for jurisdictional purposes."), *cert. denied*, 143 S. Ct. 1001 (2023); *Lyngaas v. Curaden Ag*, 992 F.3d 412, 435 (6th Cir. 2021) ("[T]he court need analyze only the claims raised by the named plaintiff, who in turn represents the absent class members[.]"); *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020) ("[T]he named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so.").

"[T]he label 'party,' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context."  *Devlin v.*

---

[8] End-Payor Plaintiffs' Memorandum of Law in Support of Motion for Class Certification, ECF No. 587, at 4-11.
[9] The named EPP class representatives indisputably established personal jurisdiction.

*Scardelletti*, 536 U.S. 1, 9-10 (2002) ("Nonnamed class members … may be parties for some purposes and not for others."). In this context, the R&R agreed that absent class members, unlike named plaintiffs, are not parties for the purposes of assessing citizenship for diversity jurisdiction or determining proper venue, and there is no reason to treat differently the personal jurisdiction inquiry. R&R, at 28. To label unnamed EPP class members "parties" that must establish personal jurisdiction would "undermin[e] the goals of the class action device," a "concern" that "is present here." R&R, at 28. Extending *BMS* to federal class actions would represent "a major change in the law of personal jurisdiction and class actions[,]" *Mussat*, 953 F.3d at 448, and cannot be squared with *BMS*'s "explicit statement … that its decision was based on 'settled principles regarding specific jurisdiction[.]'" R&R, at 29 (quoting *BMS*, 582 U.S. at 264).

Magistrate Judge Aaron went on to find that even if *BMS* were to apply, Takeda still loses. R&R, at 29. Takeda consented to jurisdiction "for the purposes of this case," which encompasses the class as a whole, and not just the named plaintiffs. *Id.* It was therefore unnecessary to consider EPPs' alternative arguments that Takeda waived the defense and that the New York license agreements establish personal jurisdiction. *Id.* at 29 n.33; *id.* at 30 n.36.

### A.    Takeda Has Not Established That New York Law Applies.

Takeda argued that New York state courts assess personal jurisdiction over the defendant separately for absent class members, citing two cases in a footnote that do no such thing.[10] The R&R appropriately rejected both cases as inapplicable to the issue at hand. R&R, at 21-22. Takeda argues this somehow improperly shifted the burden onto Takeda, because, according to Takeda, EPPs have the burden of establishing personal jurisdiction for the claims of unnamed class

---

[10] *Colt Indus. S'holder Litig. v. Colt Indus. Inc.*, 566 N.E.2d 1160 (N.Y. 1991); *Levy Investments, Ltd. v. USI Holdings Corp.*, 2007 WL 7321658, at *13 (N.Y. Sup. Ct. Mar. 28, 2007).

members under New York law.  Obj., at 24-25 (arguing that the "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant") (internal citation omitted).

Takeda's argument is circular.  It relies only on the unremarkable proposition that personal jurisdiction of federal courts in diversity cases (as well as many federal question cases) is "determined by" the jurisdiction of the forum state, and that New York's long arm statute applies a narrower test than the one provided under the Fourteenth Amendment.  Obj., at 23-24.  But, as the R&R recognized,[11] that means only that *if* a New York federal court needs to assess personal jurisdiction over a defendant *then* (with certain exceptions) New York's long-arm statute, as interpreted by New York state courts, applies.[12]  The Seventh Circuit faced a similar question-begging argument and handedly dismissed it: "It is true that, with certain exceptions, a federal district court has personal jurisdiction only over a party who would be subject to the jurisdiction of the state court where the federal district court is located. But . . . a district court need not have personal jurisdiction over the claims of absent class members at all." *Mussat*, 953 F.3d at 448.

The R&R correctly concluded federal case law "is directly on point" because "Takeda has failed to establish that New York law addresses the issue now before the Court."  R&R, at 27 n.30.

## B.    Takeda's *BMS* Arguments Are Meritless.

### 1.    Takeda Cites No Case in Disagreement with the R&R.

Takeda attempts to portray the case law as divided both among the circuits and within the Second Circuit.  It is not.  To say that a majority of courts reject Takeda's position would be a

---

[11] As the R&R states: "*If* the Court *were* to consider whether there is personal jurisdiction over Takeda with respect to the claims of unnamed class members, New York law would apply."  R&R, at 20 n.25 (emphasis added).

[12] Under Rule 4(k), in the absence of a federal statute authorizing nationwide service or other service beyond the bounds of the district, "a federal court normally looks ... to the long-arm statute of the State in which it sits to determine whether a defendant is amenable to service, a prerequisite to its exercise of personal jurisdiction." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 105 (1987); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012). Where, as here, "plaintiffs bring state law claims in federal court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), the relevant state's long-arm statute provides the statutory basis for personal jurisdiction." *DeCoursey v. Murad, LLC*, 673 F. Supp. 3d 194, 208 (N.D.N.Y. 2023).

gross understatement. Three appellate courts have ruled on the issue and have all rejected Takeda's arguments based on the same rationale, which the R&R expressly adopted. *See Fischer v. Fed. Express Corp.*, 42 F.4th 366, 374 (3d Cir. 2022); *Lyngaas v. Ag*, 992 F.3d 412, (6th Cir. 2021); *Mussat*, 953 F.3d at 447.[13] All of the district courts in this circuit to decide the issue have ruled likewise. *Hines v. Equifax Info. Servs. LLC*, No. 19-CV-6701 (RPK) (JAM), 2024 WL 4132333, at *2 (E.D.N.Y. Sept. 10, 2024); *DeCoursey v. Murad, LLC*, 673 F. Supp. 3d 194, 208 (N.D.N.Y. 2023); *Cox v. Spirit Airlines, Inc.*, 341 F.R.D. 349, 372 (E.D.N.Y. 2022).

Even *before* the three appellate courts weighed in, a "super majority" of district courts (50 of 64) ruled that *BMS* does not change the law.[14] Of the small minority that declined to exercise jurisdiction, nearly all were from Illinois (11 of 14) and so were abrogated by *Mussat*. Since *Mussat*, neither Takeda nor the R&R have identified any cases holding in Takeda's favor. To EPPs' knowledge, there are none. The law quite clearly is settled.

Takeda cites cases as "flatly inconsistent" with the R&R, but all merely ruled that it was premature to raise *BMS*-type arguments on a motion to dismiss; they expressly declined to rule on the merits of the issue and did not hold or even suggest that absent class members are parties for personal jurisdiction purposes.[15] And the one district court case that Takeda wrongly states is "inconsistent" with the three appellate courts only ruled that the *named* plaintiffs must establish

---

[13] Takeda represented that the Third Circuit in *Fischer* did not squarely address the *BMS*-issue because it involved an FLSA case. Not so. *Kelly v. RealPage Inc.*, 47 F.4th 202, 211 n.7 (3d Cir. 2022) ("RealPage's personal jurisdiction argument, premised on the Supreme Court's recent decision in [*BMS*] is foreclosed by our recent decision in *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 375 (3d Cir. 2022).").

[14] D. Wilf-Townsend, Did *Bristol-Myers Squibb* Kill the Nationwide Class Action?, 129 Yale L.J. Forum 205, 208, 223 (2019).

[15] *See Moser v. Benefytt, Inc.*, 8 F.4th 872, 879 (9th Cir. 2021) ("Although HII asks us to resolve [the *BMS* objection] now, like the Fifth Circuit in *Cruson*, we leave that matter for the district court on remand"); *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 249 n.7 (5th Cir. 2020); *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 298 (D.C. Cir. 2020) ("Because the class in this case has yet to be certified, [the defendant's] motion to dismiss the putative class members is premature."); *Shaw v. Hornblower Cruises & Events, LLC*, No. 21-cv-10408, 2023 WL 3738731, at *5 (S.D.N.Y. May 31, 2023); *Lugones v. Pete and Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 236 (S.D.N.Y. 2020); *Hawkins v. Well Path, LLC*, 2020 WL 4287447, at *6 (S.D.N.Y. 2020).

personal jurisdiction. *Chizniak v. CertainTeed Corp.*, No. 1:17-CV-1075 (FJS/ATB), 2020 WL 495129, at *5 (N.D.N.Y. Jan. 30, 2020). "[T]here is nothing remarkable about" that. R&R, at 25.

### 2.  Takeda Offers No Reason to Conclude Absent Members Are Parties Required to Establish Personal Jurisdiction Over Takeda.

The R&R rightly "agree[d] with the reasoning set forth" by the three appellate courts. And just last week, Judge Kovner did the same thing. *Hines*, 2024 WL 4132333, at *2 (granting class certification and declining to extend *BMS* for "essentially the reasons stated in the opinions of the three courts of appeals"). Nothing in Takeda's objections undermines the validity of the rationale.

Takeda focuses mostly on a portion of one sentence in Judge Aaron's R&R: "absent class members are not considered parties for assessing diversity of citizenship or in determining proper venue and there is 'no reason why personal jurisdiction should be treated any differently from subject-matter jurisdiction and venue.'" R&R, at 28 (quoting *Mussat*, 953 F.3d at 447). Takeda ventures down an Article III rabbit hole, following the Supreme Court's *TransUnion* case that requires all class members to have Article III standing in order to recover individual damages. Obj., at 27-28. Takeda then equates standing to subject-matter jurisdiction, and charges that if subject-matter jurisdiction and personal jurisdiction should not be "treated any differently," then absent class members should be treated as parties for personal jurisdiction purposes too.

This effort to daisy-chain together a personal-jurisdiction argument fails at each step. First, as Judge Aaron rightly points out, absent class members are *not* treated as parties who must have Article III standing to certify a class; *TransUnion* concerned only the recovery of individual damages.[16] Second, Takeda is also wrong to claim that absent class members require a separate

---

[16] While "[e]very class member must have Article III standing in order to recover individual damages," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), a plaintiff is not required to show that each class member has standing before a class can be certified. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–64 (2d Cir. 2006); *see Barrows v. Becerra*, 24 F.4th 116, 128 (2d Cir. 2022); *see also* 1 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 2:3 (6th ed. 2024) ("[T]he vast majority of courts continue to heed the basic rule that the standing inquiry focuses on the class representatives, not the absent class members.").

subject-matter jurisdiction analysis: as *Mussat* recognized, the Supreme Court holds that "absent class members are not considered parties for assessing whether the requirement of diverse citizenship under 28 U.S.C. § 1332 has been met." 953 F.3d at 447 (citing *Devlin*, 536 U.S. at 10). Having gotten it wrong at the first two steps, Takeda's final conclusion that absent class members must be deemed "parties" for personal jurisdiction purposes—a conclusion at odds with all of the authority—falls flat.

Moreover, Takeda ignores not only that absent class members do not affect diversity of citizenship, but also that the same is true of venue. Why those two? As Judge Kovner aptly explains: they "involve[e] where a lawsuit may be brought," which is "most analogous to personal jurisdiction." *Hines*, 2024 WL 4132333, at *2. Article III precludes a plaintiff from suing and recovering in *all* courts. *Langan v. Johnson & Johnson Consumer Cos., Inc*., 897 F.3d 88, 93 (2d Cir. 2018) ("The doctrine of standing tests whether a prospective litigant may properly invoke the power of the federal courts."). Personal jurisdiction, venue, and diversity of citizenship, by contrast, concern only *where* to sue—not the ability to bring suit at all. There is "no reason 'why personal jurisdiction should be treated any differently' from these other questions involving where suit may be filed." *Hines*, 2024 WL 4132333, at *2.

Takeda's artificial invocation of Article III to conclude that absent class members *are* parties for purposes of personal jurisdiction has been endorsed by no court and eschews the pragmatic, context-specific, and purpose-driven inquiry required under *Devlin* and followed by all three appellate courts. The *Devlin* Court reasoned that absent class members are treated as non-parties for inquiries concerning diversity of citizenship specifically because it is "justified by the goals of class action litigation." *Devlin*, 536 U.S. at 10. And the Second Circuit understands these goals to justify treating absent class members as non-parties for venue as well. *Curley v. Brignoli,*

*Curley & Roberts Assocs.*, 915 F.2d 81, 87 (2d Cir. 1990) ("class status may expand the number of districts where venue is proper"). The R&R identified the "goals of the class action device" as one of the "points" that justify the conclusion that absent class members are not parties for personal jurisdiction purposes. R&R, at 28. Takeda does not and cannot object to that rationale.

The exceptional nature of class actions, and the goals Rule 23 seeks to promote, cannot be ignored. In *BMS*, mass tort plaintiffs all filed individual state court lawsuits with individualized injuries and individualized defenses. *Lyngaas*, 992 F.3d at 435 (in coordinated mass action, such as in *BMS*, "each plaintiff is a named party" meaning that "the defendant must defend against each plaintiff and their individualized claims"). By contrast, "[c]lass actions under Rule 23 . . . are an exception to the general rule that one person cannot litigate injuries on behalf of another." *Langan*, 897 F.3d at 93. As the Second Circuit holds, a named plaintiff in federal court who successfully invokes Rule 23 is said to "possess the same interest" and "suffer the same injury" as absent class members, even those who "have claims under different states' laws that generally prohibit the same conduct." *Id.* at 94-95 (quoting *Wal-Mart*, 564 U.S. at 348). "Such suits result in efficiencies of cost, time, and judicial resources and permit a collective recovery where obtaining individual judgments might not be economically feasible." *Id.* at 94.

The R&R's "concern" about "undermining the goal of the class action device" is not abstract. It is very real here. If personal jurisdiction were required for each class member, there likely is no alternative forum outside New York for the class to bring a single case.[17] Takeda certainly has not identified any viable alternative. Instead, numerous state-specific class actions would need to be filed in the district courts of the states where a named plaintiff's overcharge

---

[17] There is no forum that would have general jurisdiction over all the defendants. One of the Takeda entities is located in Japan. Answer, ECF. No. 279 ¶ 20.

injury occurred.[18]  What good does that do?  Takeda would need to litigate the "same injury," *Langan*, 897 F.3d at 94, under functionally identical laws that prohibit the same conduct, under the same federal rules of procedure—in 22 different courts across the country.  *Nobody* wants that. Not even Takeda.  Takeda's proposal serves only to undermine the "efficiencies of cost, time, and judicial resources" and ability for a "collective recovery"—the fundamental goals of Rule 23 class actions.  *Id.*

Despite insisting that it has a due process right to bring about that very result, (Obj., at 30), Takeda says precious little why.  Indeed, it says nothing at all.  Takeda has not, and cannot, credibly appeal to the "primary concern" animating personal jurisdiction—"the burden on the defendant" of litigating in the forum.[19]  *BMS*, 582 U.S. at 263 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).  The named plaintiffs *have* established personal jurisdiction over Takeda—Takeda even consented to it.  And "[a]s a practical matter, a defendant litigates against only the class representative." *Lyngaas*, 992 F.3d at 435.  Certifying a class will literally change *nothing* about Takeda's litigation burden. That is what makes class actions so exceptional.

"[T]he relevant claim is the claim of the class … as exemplified by the named plaintiff." *Fischer*, 42 F.4th at 375. And for that reason, federal courts require only the named plaintiff to establish jurisdiction over the defendant.

---

[18] Takeda appears to concede this, arguing that EPPs' class definition *on its face* includes class members who lack personal jurisdiction because New York is not a class state. The implication being that only the state in which the injury occurred, and thus whose state law is invoked, can serve as the forum state.

[19] Nor has Takeda appealed to any federalism interests, which function to "divest *the State* of its power to render a valid judgment." *BMS*, 582 U.S. at 263 (emphasis added).

### 3.    Takeda's Newly Found "Substantive" Rights Are Not Abridged.

Takeda argues that by certifying the class the Court would violate the Rules Enabling Act because its "due process right to challenge the court's jurisdiction" would be abridged. Obj., at 29-30.  The argument was not worthy enough for Takeda to raise in its opposition brief.[20]

The Rules Enabling Act provides that the Federal Rules of Civil Procedure may not "abridge, enlarge, nor modify the substantive rights" of a litigant.  *Sibbach v. Wilson & Co.*, 312 U.S. 1, 10 (1941) (quoting 28 U.S.C. § 2072(b)).  "[S]ubstantive right[]" refers to rights conferred by the underlying substantive laws in a given proceeding.  Takeda asserts only a procedural right, not a right under substantive law.  "Courts considering this argument have routinely found that a nationwide class action does not abridge any substantive due process rights such that the maintenance of a class action violates the Rules Enabling Act." *Samson v. United Healthcare Servs.*, Inc., 2024 WL 866815, at *5 (W.D. Wash. Feb. 29, 2024); *Choi v. Kimberly-Clark Worldwide, Inc*., 2019 WL 4894120, at *6 (C.D. Cal. Aug. 28, 2019); *Hicks v. Houston Baptist Univ*., 2019 WL 96219, at *6 (E.D.N.C. Jan. 3, 2019); *Krumm v. Kittrich Corp*., 2019 WL 6876059, at *5 (E.D. Mo. Dec. 17, 2019).

### C.    Personal Jurisdiction Over Takeda Exists Even If the Court Were to Analyze the Claims of Absent Class Members.

### 1.    Takeda Expressly Admitted Personal Jurisdiction in Its Answer.

In its Answer, Takeda stated: "Defendants admit that personal jurisdiction exists *in this case*."  R&R, at 30 (emphasis added).  Judge Aaron recognized that "this case" is a class action, correctly ruling that Takeda expressly consented to jurisdiction with respect to the claims of the

---

[20] Takeda made a passing reference to the Rules Enabling Act in one sentence in its improperly filed sur-reply. R&R, at 20 n.23.

entire "purported class action" asserted under the complaint—both the named and unnamed plaintiffs alike.  *Id.*

Takeda argues that consent must be unequivocal to the unnamed plaintiffs.  Obj., 30-31.  *It is*.  Takeda did not qualify or limit its consent in any way.  Its admission to personal jurisdiction "in this case"—in a responsive pleading to a class action complaint—could only mean one thing.  *See Lyngaas*, 992 F.3d at 435 ("a class action is formally one suit").

It is black letter law that when a named plaintiff "commences a suit" on behalf of a class, the complaint itself "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554–55 (1974).  Takeda was "put on notice by the filing of the [EPPs'] complaint of the possibility of classwide liability." *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395 (1977).  It consented to jurisdiction "in this case," (Answer, ¶ 12, ECF No. 279), in response to a pleading that provided the "essential information necessary to determine both the subject matter and size of the prospective litigation." *Am. Pipe*, 414 U.S. at 555.

Takeda's reliance on the "legal conclusion" response to personal jurisdiction in its answer is unavailing.  Obj., at 31.  A defendant must answer the allegations in a complaint in one of three ways: admit, deny, or state that it lacks sufficient information or knowledge to answer. Fed. R. Civ. P. 8(b)(1)-(6).  The whole point of this procedure is to "apprise the opponent of those allegations in the complaint that *stand admitted and will not be in issue at trial* and those that are contested and will require proof[.]"  *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 250-51 (2d Cir. 2024) (emphasis added).  Takeda's attempt to disavow its unequivocal admission of personal jurisdiction in this case, several years after it was made, defies the very core of Rule 8.

14

Takeda's cases are easily distinguishable: they each analyzed only whether certain statements in a written agreement—none of which expressly concerned "personal jurisdiction" or were made in a court pleading for "this case"—were sufficient to establish a party's consent to personal jurisdiction. *See* Obj. 30-31 (citing *Cont. Marine Carriers, Inc. v. Abbott Lab'ys, Int'l*, 1993 WL 106374, at *4-5 (S.D.N.Y. Apr. 6, 1993) (holding that a bill of lading and pre-suit letter from counsel—neither of which touched on the jurisdiction of New York courts—were insufficient to establish personal jurisdiction); *N.C.C. Motorsports, Inc. v. K-VA-T Food Stores, Inc*., 975 F. Supp. 2d 993, 1001 (E.D. Mo. 2013) (holding that a choice of law provision in a vehicle lease was insufficient to establish personal jurisdiction)).

### 2. Takeda Has Never Pleaded or Filed a Motion Objecting to Personal Jurisdiction.

Any notion that Takeda's consent is not unambiguous is foreclosed by the fact that Takeda never raised the defense in the Answer. Consent to personal jurisdiction need not be express; it can be implied, including through a party's litigation conduct. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016). No court has held that a defendant can preserve the defense despite failing to *plead* it, contrary to Rule 12(h)(1), while simultaneously pleading that personal jurisdiction exists. *Mason v. Lumber Liquidators, Inc*., 2019 WL 2088609, at *4 (E.D.N.Y. May 13, 2019), aff'd, 2019 WL 3940846 (E.D.N.Y. Aug. 19, 2019); *Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, No. 23-10726, 2024 WL 3738048, at *8 (5th Cir. Aug. 9, 2024) (a party may "impliedly consent to personal jurisdiction by. . . answering a complaint without objection"). Takeda *did* plead other defenses pertaining to absent class members in its Answer. *See* Answer at p.75, Fifth Affirmative Defense ("the putative class members that Plaintiffs purport to represent have not suffered antitrust injury or injury in fact."). Why should the pleading rules be any different for personal jurisdiction? Indeed, *BMS* was decided two years before Takeda filed its Answer.

Judge Aaron passed on the issue of waiver given that Takeda expressly consented.  But the R&R does conclude that if Takeda were found not to waive, "the inefficiency of such a procedure is another reason counseling in favor of finding that jurisdiction only need be considered . . . with respect to the named plaintiffs."  R&R, at 29 n.33.  Takeda offers no objection to that finding.

### 3.    Evidence of Record Establishes Specific Jurisdiction for All Class Member Claims Alike.

License agreements that settle New York litigation in exchange for delaying the supply of generic product nationwide (and also consent to personal jurisdiction in New York) unquestionably constitute a New York business transaction under § 302(a)(1). And there can be no serious dispute that the delayed entry from the New York license agreements has an "articulable nexus" or "substantial relationship" to both Takeda submitting and maintaining its false patent information (the unlawful conduct) and the absence of lower-priced generics (EPPs' injury). *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 129-130 (2d Cir. 2022) (quotations and citations omitted); *see also id.* at 130 ("causation is not required"; the "claims in some way" need only be "arguably connected to the transaction"). This New York contact relates to the claims of class members equally, regardless of where their overcharge occurred.  So even if absent class members need to establish personal jurisdiction separately from the named plaintiffs (they do not), and even if the claims of absent class members are not part of "this case" over which Takeda consented personal jurisdiction (they are), and even if Takeda did not waive its defense (it did), this Court can still conclude that all class members established specific jurisdiction over Takeda.

## III.    THE R&R CORRECTLY CONCLUDED THAT EPPs' MOTION FOR CLASS CERTIFICATION SHOULD BE GRANTED

Takeda also objects to the R&R's recommendation to grant EPPs' Rule 23 motion.  But Takeda simply rehashes the arguments regarding class membership that Judge Aaron already rejected in the R&R.  In so doing, it continues to disregard the predominance standard, overlooks

that common evidence can prove all substantive elements of the claims, and obsesses myopically

over claims administration, even though that process will not affect *a penny* that Takeda pays.

Truth be told, *countless* EPP classes—litigation and settlement—get certified. A court just

two weeks ago certified an EPP class involving ***the same*** methodology that Craft offers here.

*Government Employees Health Association v. Actelion Pharmaceuticals Ltd*., No. CV GLR-18-

3560, 2024 WL 4122123 (D. Md. Sept. 6, 2024).  And it was in a jurisdiction that Takeda contends

employs a heightened administrative feasibility requirement contrary to Second Circuit law.

> **A.    The R&R Correctly Held the Common Issues of Violation, Injury, and Aggregate Damages Predominate**

> > **1.    The R&R Properly Applied the Predominance Standard, Which Takeda Disregards**

Takeda's objection shows a disregard for the proper analysis of predominance, which the

R&R followed. Predominance "trains on the legal or factual questions that *qualify each class*

*member's case as a **genuine controversy***." *In re Petrobras Sec*., 862 F.3d 250, 271 (2d Cir. 2017)

(quoting *Amchem Prods.*, 521 U.S. at 623) (emphasis added).  The inquiry begins by identifying

"the elements of the underlying cause of action." R&R, at 37 (quoting *Erica P. John Fund, Inc. v.*

*Halliburton Co*., 563 U.S. 804, 809 (2001)).  The next step, as the R&R followed, requires the

court to "'consider *all* factual or legal issues' and classify them as subject either to common or

individual proof."  *Haley v. Tchrs. Ins. & Annuity Ass'n of Am*., 54 F.4th 115, 121 (2d Cir. 2022)

(emphasis in original). And finally, the Court must determine whether the common issues "***are***

***more prevalent or important***" than the individualized issues, *Tyson Foods*, 577 U.S. at 453

(emphasis added)—a qualitative, not quantitative, analysis that "must account for the nature *and*

significance of the material common and individual issues in the case." *Petrobras*, 862 F.3d at

271; *Haley*, 54 F.4th at 121 ("Predominance is not simply an exercise in tallying up issues[.]").

2.    **Takeda Does Not Dispute That Violation, Injury, and Damages Can Be Fairly Adjudicated Class-Wide.**

The R&R correctly identified the elements of EPPs' claims as involving (1) violation (2) injury and causation and (3) damages. R&R, at 38 (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc*., 502 F.3d 91, 105 (2d Cir. 2007) (cleaned up)). Judge Aaron then rigorously combed through each element and classified all the legal and factual issues as subject to either individual or common proof. R&R, at 38-59.

*Violation.* The R&R "easily" concluded that "the question of whether Takeda improperly characterized the '584 and '404 Patents as claiming the drug ACTOS already has been answered by the Second Circuit in the affirmative, using evidence that would be common to the class." R&R, at 39. (internal citation omitted). The R&R found no individualized inquiry necessary to establish market power, the other element of violation, which Takeda does not dispute. Nor does Takeda dispute that "[g]enerally, the plaintiffs' successful showing of common evidence of a violation is a compelling reason to find that predominance is satisfied overall." *In re Air Cargo Shipping Servs. Antitrust Litig*., 2014 WL 7882100, at *40 (E.D.N.Y. Oct. 15, 2014).

*Injury.* After rigorously analyzing the parties' expert reports and evidence, the R&R found that EPPs meet their burden of showing common evidence is capable of demonstrating virtually all class members were injured. R&R, at 46-47 (consumers); R&R, at 49 (TPPs). Thus "the EPPS have put forth a workable methodology to demonstrate that antitrust injury can be determined on a classwide basis." *Id.* Takeda does not dispute that "where, as here, the legal and factual questions raised by the second element of an antitrust claim are common to the class, 'the predominance requirement of Rule 23(b)(3) is likely met.'" *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig*., 335 F.R.D. 1, 31 (E.D.N.Y. 2020) (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007)).

18

***Damages.*** But not only that, Judge Aaron *also* found that EPPs "presented a model of aggregate classwide damages that roughly reflects the alleged harm and does not improperly assess damages based on uninjured class members." R&R, at 52. Takeda raises no objection there either. Regarding the claims administration process, the R&R concluded that there will be "individual proof required for damages distribution" but it "will not overwhelm issues that can be addressed using common proof," which Takeda "does not meaningfully challenge." R&R, at 52; *id.* at n.53 ("If we were just talking about demonstrating damages post judgment, this process wouldn't be a problem.") (quoting 7/31/24 Tr. at 117).

### 3.    Takeda's Class Membership Concerns Are Meritless

Takeda argues that the claims administration process proposed by Craft requires "extensive individual analysis." Obj., at 34. The R&R thoroughly addressed Takeda's contention that "Craft's proposed process for determining class membership would require extensive individual inquiries." R&R, at 57. It also addressed head on Takeda's contention that "class members would be required to submit their own data and that additional steps would be required to confirm membership and apply exclusions." Judge Aaron had no problem concluding that "this is not a case where individualized inquiries regarding class membership "threaten to predominate over the common questions of liability." *Decastro v. City of New York*, No. 16-CV-3850 (RA), 2019 WL 4509027, at *14 (S.D.N.Y. Sept. 19, 2019).

For example, in *Decastro*, Judge Abrams found that "City had presented evidence of fraud which 'put into doubt' the credibility of sworn affidavits for establishing class membership." R&R, at 58 n.59. Takeda has provided *no* evidence of the sort.

Nor could it. "[G]iven the nature of the pharmaceutical industry, there are multiple sources of data that can be used to identify qualifying transactions, including data from six PBMs

that handle approximately 96 percent of all prescription drug transactions." R&R, at 57. Craft opined that "data can be used to determine class membership and apply exclusion criteria and that affidavits and other documents can confirm these findings." *Id.*

Takeda's expert in rebuttal to Craft, Melissa Krause, was scheduled to testify. But at the hearing, Takeda announced it would not be calling her. R&R, at 58 n.57. Judge Aaron still considered Krause's report when addressing Takeda's arguments. R&R, at 58. Sometimes Krause's opinions were objectively false, such as her opinions that the available data was insufficient to determine class membership and apply exclusions. She "just didn't look in the right place." R&R, at 58. Krause also opined that data variability that would make the process of confirming class members "difficult" or "labor intensive." *Id.* Judge Aaron aptly recognized this to be "an administrative feasibility argument dressed up in predominance clothing." *Id.* (citing *City of Philadelphia v. Bank of Am. Corp.,* No. 19-CV-1608 (JMF), 2023 WL 6160534, at *12 (S.D.N.Y. Sept. 21, 2023)). Judge Aaron correctly found, that "EPPs have met their burden to show that common issues 'are more prevalent or important' than individual ones." *Id.* at 59.

Takeda recycles its same cases to support the same argument that class membership must be determined at trial. Obj., at 35. But Judge Aaron distinguished those cases as involving predominance concerns regarding the "ability of the plaintiffs to determine class membership at all" or the need to prove not just class membership but also an "element of putative class members' claims." *Id.* at 54.

Lastly, Takeda's insistence (Obj., 38-40) that it has a due-process right to challenge individual claims of class membership can be "easily dispatched." R&R, at 55. There is "no concern" by the Second Circuit that uninjured class members must be identified during the liability phase, and because EPPs have an ascertainable class, Takeda's rights to ensure class members are

bound by the judgment are protected. R&R, at 56. In addition, the Court made a factual finding that EPPs have a sufficiently reliable damages model, which, coupled with the ability to identify members during class administration (and Takeda's ability to participate in it so chooses), ensures Takeda's rights are protected. *In re Restasis*, 335 F.R.D. 1, 24 (E.D.N.Y. 2020) ("This model also ensures that Allergan will not be forced to pay a penny more than the damages the jury determines it caused, protecting its due process rights.").[21]

## B.    The R&R Correctly Understood That the Second Circuit Rejects Administrative Feasibility At Class Certification.

Takeda states that Judge Aaron's R&R "does not consider administrative feasibility at all." Obj., at 38. As Takeda knows, "the Second, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits have rejected an administrative feasibility requirement as unsupported by the plain language of Rule 23 and too restrictive." 1 McLaughlin on Class Actions § 4:2 (20th ed.).

And the R&R recognized that the Second Circuit has expressly "decline[d] to adopt a heightened ascertainability theory that requires a showing of administrative feasibility *at the class certification stage*." R&R, at 59 n.60 (quoting *Petrobras*, 862 F.3d at 265) (emphasis added).

But the R&R still considered manageability arguments properly under the superiority analysis:

> Takeda challenges superiority only with respect to the last factor. However, the Court is satisfied that manageability concerns do not render a class action inferior to other methods of adjudication. Even if implementing Craft's methodology turns out to be difficult or time intensive, as Takeda contends, such difficulties would not defeat superiority given the other factors that weigh in favor of certification.

---

[21] Takeda cites two principal cases for this argument. One did not even mention the words "due process." *Diverse Partners, LP v. Agribank, FCB*, 2019 WL 4305008 (S.D.N.Y. Sept. 11, 2019). The other—*Hunter v. Time Warner Cable*—differed from *Actos* in an essential way: in *Hunter*, every additional class member meant the defendant would have to pay more; by contrast here, EPPs will prove aggregate damages at trial, such that determinations of class membership have no effect on Takeda's overall liability. 2019 WL 3812063 (S.D.N.Y. Aug. 14, 2019).

21

R&R, at 60-61.  And the R&R addressed Takeda's administrative feasibility argument under predominance in the alternative.  R&R, at 58.

## CONCLUSION

For the foregoing reasons, the Court should overrule Takeda's objections and adopt the R&R in full.


Dated: September 20, 2024                                Respectfully Submitted,

                                                        *Steve D. Shadowen*
                                                        _____
                                                        Steve D. Shadowen*
                                                        Matthew C. Weiner
                                                        Richard M. Brunell
                                                        Tina Miranda
                                                        Sherwin Faridifar
                                                        Deirdre Mulligan
                                                        **HILLIARD & SHADOWEN LLP**
                                                        1135 W. 6th St.
                                                        Suite 125
                                                        Austin, TX 78703
                                                        Telephone: (855) 344-3298
                                                        steve@hilliardshadowenlaw.com
                                                        matt@hilliardshadowenlaw.com
                                                        rbrunell@hilliardshadowenlaw.com
                                                        tmiranda@hilliardshadowenlaw.com
                                                        sfaridifar@hilliardshadowenlaw.com
                                                        dmulligan@hilliardshadowenlaw.com
                                                        *Interim Co-Lead Counsel

                                                        Jayne A. Goldstein, Esq.*
                                                        **MILLER SHAH LLP**
                                                        1625 N. Commerce Parkway
                                                        Suite 320
                                                        Ft. Lauderdale, FL 33326
                                                        Direct Dial: 954-903-3170
                                                        954-515-0123
                                                        jagoldstein@millershah.com
                                                        *Interim Co-Lead Counsel

                                                        Natalie Finkelman Bennett
                                                        **MILLER SHAH LLP**

1845 Walnut St., Suite 806
Philadelphia, PA 19103
P: (866) 540-5505
nfinkelman@millershah.com

Laurie Rubinow
**MILLER SHAH LLP**
875 Third Avenue, Suite 800
New York, NY 10022
Telephone: (212) 419-0156
lrubinow@millershah.com
Interim Liaison Counsel

Kenneth A. Wexler*
Kara A. Elgersma
Justin Boley
Tyler Story
**WEXLER BOLEY & ELGERSMA LLP**
311 S. Wacker Drive, Suite 5450
Chicago, IL 60606
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
kaw@wbe-llp.com
kae@ wbe-llp .com
jnb@ wbe-llp .com
tjs@ wbe-llp.com
* Interim Co-Lead Counsel

Michael M. Buchman*
**MOTLEY RICE LLC**
777 Third Avenue, Fl 27
New York, New York 10017
Telephone: (212) 577-0040
MBuchman@motleyrice.com
*Interim Co-Lead Counsel

**CERTIFICATE OF SERVICE**

I, Matthew C. Weiner, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access this filing through the Court's system and notice of this filing will be sent to these parties by operation of the Court's electronic filing system.

Dated: September 20, 2024                                      Respectfully Submitted,

                                                              /s/ *Matthew C. Weiner*
                                                              Matthew C. Weiner