**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ACTOS END-PAYOR ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL END-PAYOR ACTIONS | Master File No. 1:13-cv-09244-RA-SDA |

**END-PAYOR PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION TO AUTHORIZE DISTRIBUTION OF CLASS CERTIFICATION NOTICE TO THE END-PAYOR CLASS, APPOINTING A NOTICE ADMINISTRATOR, AND FORMALLY APPOINTING CLASS COUNSEL AND CLASS REPRESENTATIVES**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................................ 1 | |
| II. | THE NOTICE PLAN SHOULD BE APPROVED ............................................................ 4 | |
| | A. | The Proposed Form of Notice Complies with Rule 23 ............................................ 4 |
| | B. | The Proposed Manner of Notice Complies with Rule 23 ........................................ 6 |
| | C. | Kroll Is Well-Qualified to Serve as Notice Administrator .................................... 10 |
| | D. | A 30-Day Opt-Out Period is Adequate and Fair .................................................... 11 |
| III. | THE COURT SHOULD ENTER AN ORDER FORMALLY APPOINTING CLASS REPRESENTATIVES AND CLASS COUNSEL. ........................................................... 11 | |
| IV. | CONCLUSION .................................................................................................................. 12 | |

## TABLE OF AUTHORITIES

**Cases**

*Berry Petroleum Co. v. Adams & Peck*,
  518 F.2d 402 (2d Cir. 1975) ................................................................................................ 5

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ............................................................................................ 7

*Brown v. Colegio de Abogados de Puerto Rico*,
  613 F.3d 44, 51 (1st Cir. 2010) .......................................................................................... 2

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ........................................................................................................... 6

*Elkind v. Revlon Consumer Prods. Corp.*,
  No. CV-142-484(JS)(AKT), 2017 WL 9480894 (E.D.N.Y. Mar. 9, 2017) ........................ 7

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................................ 5

*Hughes v. Kore of Ind. Enter., Inc.*,
  731 F.3d 672 (7th Cir. 2013) .............................................................................................. 7

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
  271 F. App'x 41 (2d Cir. 2008) .......................................................................................... 6

*In re Aggrenox Antitrust Litig.*,
  No. 3:14 md-02516-SRU (D. Conn. Mar. 6, 2018) ........................................................... 7

*In re Aggrenox Antitrust Litig.*,
  812 F. App'x 26 (2d Cir. 2020) .......................................................................................... 5

*In re Lidoderm Antitrust Litig.*,
  3:14-md-02521-WHO (N.D. Cal. June 13, 2017) .............................................................. 7

*In re Lidoderm Antitrust Litig.*,
  3:14-md-02521-WHO (N.D. Cal. June 3, 2019) ................................................................ 6

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  No. 04 Civ. 8144(CM), 2009 WL 5178546, (S.D.N.Y. Dec. 23, 2009) ........................... 11

*In re Nexium (Esomeprazole) Antitrust Litig.*,
  No. 1:12-md-2409 (D. Mass. Dec. 3, 2013) ....................................................................... 7

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
  527 F. Supp. 3d 269 (E.D.N.Y. 2021). ........................................................................... 4, 7

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
   1:14-md-02503-DJC (D. Mass. Apr. 14, 2017) .......................................................................... 7

*Jermyn v. Best Buy Stores, L.P.*,
   No. 08 CIV. 00214 CM, 2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) .................................... 10

*Juris v. Inamed Corp.*,
   685 F.3d 1294 (11th Cir. 2012) ................................................................................................ 7

*Macarz v. Transworld Sys., Inc.*,
   201 F.R.D. 54 (D. Conn. 2001) ................................................................................................ 7

*Menowitz v. Brown,*
   991 F.2d 36 (2d Cir.1993) ........................................................................................................ 5

*New York State Teamsters Council Health & Hosp. Fund v. Jazz Pharms., Inc.*,
   No. 20-MD-02966-RS, 2024 WL 5150632 (N.D. Cal. Dec. 16, 2024) .................................... 5

*Offor v. Mercy Med. Ctr.*,
   167 F. Supp. 3d 414 (E.D.N.Y. 2016), 676 F. App'x 51 (2d Cir. 2017) .................................. 6

*Rowe v. E.I. DuPont de Nemours & Co.,*
   Civil Nos. 06–1810 and 06–3080 (RMB/AMD), 2011 WL 3837106 (D.N.J. Aug. 26, 2011) 11

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) ........................................................... 5

*Weigner v. New York*,
   852 F.2d 646 (2d Cir. 1988) ..................................................................................................... 6

*Wolfert ex rel. Estate of Wolfert v. Transam. Home First, Inc.*,
    439 F.3d 165 (2d Cir. 2006) .................................................................................................... 8

**Other Authorities**

Manual for Complex Litigation (Second)
   § 30.211 (1985) ....................................................................................................................... 10

## I. INTRODUCTION

On September 30, 2024, this Court entered an order adopting Magistrate Judge Aaron's report and recommendation and certified a class of End-Payors (the "End-Payor Class").[1] Magistrate Judge Aaron's report and recommendation also recommended that class representatives and co-lead counsel be appointed.[2] On October 15, 2024, Takeda filed a petition, pursuant to Federal Rule of Civil Procedure 23(f), seeking permission to appeal the Court's class certification order to the United States Court of Appeals for the Second Circuit.[3] On April 1, 2025, this Court issued an opinion and order that, among other things, granted in part Plaintiffs' motion for summary judgment,[4] and subsequently scheduled trial in this certified class action to begin on July 21, 2025.[5]

Although the Court has deferred issuance of notice to the direct purchaser class until the Second Circuit resolves Takeda's 23(f) petition,[6] the End-Payor Plaintiffs ("EPPs")[7] nevertheless seek the Court's approval to issue notice to End-Payor Class members to ensure that class members are apprised of their rights sufficiently in advance of trial and to provide them with

---

[1] ECF No. 794. The certified Class includes: "All entities that, for consumption by their members, insureds, or beneficiaries, paid and/or provided reimbursement for some or all of the purchase price of Actos or generic pioglitazone in the [Class States], other than for resale, at any time from January 17, 2011 through and until December 31, 2015; and all individuals who paid for some or all of the purchase price of Actos in the [Class States] at any time from January 17, 2011 through and until December 31, 2015." *Id*. at 26.

[2] ECF No. 763 at 34, 61-62 (recommending appointment of Hilliard & Shadowen LLP, Miller Shah LLP, Wexler Boley & Elgersma LLP and Motley Rice LLP as co-lead counsel).

[3] ECF No. 806 at 2.

[4] ECF No. 825.

[5] ECF No. 826.

[6] ECF No. 806 at 5.

[7] The named EPPS are 1199 SEIU-National Benefit Fund, A.F. of L. - A.G.C. Building Trades Welfare Plan; Fraternal Order of Police, Fort Lauderdale Lodge 31, Insurance Trust Fund; City of Providence, Rhode Island; Greater Metropolitan Hotel Employers-Employees Health and Welfare Fund; Local 17 Hospitality Benefit Fund; Man-U Service Contract Trust Fund; NECA-IBEW Welfare Trust Fund, New England Electrical Workers Benefit Fund; Painters District Council No. 30 Health and Welfare Fund; Plumbers & Pipefitters Local 178 Health & Welfare Trust Fund; and Teamsters Union Local 115 Health & Welfare Fund.

ample time to exercise those rights, should they choose to do so, before the impending trial date.[8] With a July 21, 2025, trial date, EPPs believe that notice should be issued no later than June 9, 2025, for EPPs to satisfy their notice obligations by providing sufficient time for End-Payor Class members to exclude themselves prior to trial. It will take EPPs' proposed notice administrator up to 30 days to issue notice following Court approval, meaning approval of the notice plan would need to be received on or around May 9, 2025.

Accordingly, EPPs respectfully move the Court to enter an order pursuant to Federal Rule of Civil Procedure 23(c) approving the proposed form and manner of providing notice of class certification to the End-Payor Class certified by this Court, appointing Kroll Settlement Administration LLC ("Kroll") as the notice administrator, and formally appointing the EPPs as class representatives and Steve D. Shadowen of Hilliard & Shadowen LLP, Jayne A. Goldstein of Miller Shah LLP, Kenneth A. Wexler of Wexler Boley & Elgersma LLP, and Michael M. Buchman of Motley Rice LLP as Co-Lead Counsel as recommended in Magistrate Judge Aaron's report and recommendation.

EPPs' proposed form of notice complies with Rule 23(c)'s requirements. The proposed Long Form and Short Form Notices state in concise and easily understood language the nature of the action, the definition of the certified End-Payor Class, the deadline to opt out of the End-Payor Class, and the other elements set forth in Rule 23(c)(2)(B). The Long Form Notice is substantially similar to notices that have been approved in similar cases. The proposed manner of notice includes a combination of methods carefully designed to reach the third-party payor and consumers members of the End-Payor Class. The notice will include direct mail and e-mail

---

[8] *See, e.g., Brown v. Colegio de Abogados de Puerto Rico*, 613 F.3d 44, 51 (1st Cir. 2010) ("Although the rule does not say when notice must be given, '[t]he purpose of Rule 23(c)(2) is to ensure that the plaintiff class receives notice of the action well before the merits of the case are adjudicated.'" (citations omitted)).

notice to more than 45,000 third-party payors ("TPPs") based on Kroll's well-tested and frequently used proprietary database of TPPs.[9] The proposed manner of notice will also include a national press release, publication in the national publication *People Magazine,* with a circulation of more than 2,500,000 readers, Spanish-language newspapers *El Nuevo Dia* and *Primera Hora*, with circulations over 175,000 readers, and targeted internet advertising, including online display and search term advertisements to be distributed over Google's advertising network as well as social media websites such as Facebook, Instagram, and YouTube to reach both consumer class members and TPP administrators. The notice plan is expected to generate over 150 million impressions and reach over 80% of the End-Payor Class an average of at least 3.9 times and satisfies Rule 23(c).[10]

EPPs also propose that Kroll serve as the notice administrator. Kroll has been appointed as the class notice and/or claims administrator in numerous cases, and Kroll (and its personnel) has provided notice administration services in several end-payor pharmaceutical antitrust class actions and is well-qualified to serve as notice administrator here.[11] If approved as notice administrator, Kroll will cause notice to be issued within 30 days of the Court's approval of EPPs' proposed notice plan.

Kroll will host a dedicated website, which will provide the key information regarding the End-Payor Class and the litigation, include links to the Long Form Notice, the operative complaint, the Court's class certification order, other important documents, and advise class members of their ability to remain in the End-Payor Class or opt out and how to do so.[12] Similar

---

[9] Declaration of Cecily G. Uhlfelder of Kroll Settlement Administration LLC ("Uhfelder Decl."), attached as Exhibit 1 to the Declaration of Kenneth A. Wexler ("Wexler Decl."), at ¶¶ 11-18.
[10] Uhlfelder Decl. at ¶¶ 19-37, 42.
[11] Uhlfelder Decl. at ¶¶ 3-5.
[12] Uhfelder Decl. at ¶ 39.

notice programs have been approved in comparable class actions in this District and around the country.[13]

## II. THE NOTICE PLAN SHOULD BE APPROVED

### A. The Proposed Form of Notice Complies with Rule 23

Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), "[t]he notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

EPPs' proposed form of notice satisfies each of the Rule 23(c)(2)(B) requirements.

The proposed Long Form Notice is modeled after the Federal Judicial Center's template notice.[14] The first page of the Long Form Notice succinctly describes the litigation, the parties' primary claims and defenses, and the End-Payor Class in concise, easily understood language.[15] The first page also includes a chart that clearly sets forth End-Payor Class members' two options—remain in the End-Payor Class or opt out—and the deadline for submitting an opt out

---

[13] *See, e.g., In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 527 F. Supp. 3d 269, 275 (E.D.N.Y. 2021).
[14] *See* Long Form Notice, attached as Exhibit 2 to the Wexler Decl.
[15] Long Form Notice at p. 1.

4

request.[16] EPPs' proposed Long Form Notice explains that End-Payor Class members who do not opt out will be bound by the Court's orders and a judgment, as well as any settlement reached.[17] The Long Form Notice also displays contact information for Kroll and Co-Lead Counsel,[18] and advises End-Payor Class members that they may appear in the litigation through their own attorney.[19]

The Long Form Notice also details the process for opting out of the End-Payor Class.[20] A TPP that seeks to opt out health plans for which it provides only administrative services will be required to submit proof of its authority to act on the plans' behalf.[21] This requirement protects the due process rights of class members to "individually choose whether to continue in a suit as class members."[22] A similar requirement for TPP opt-outs has been endorsed by the Second Circuit in another pharmaceutical antitrust case.[23] The Long Form Notice directs class members

---

[16] Long Form Notice at p. 1.
[17] Long Form Notice at p. 1 and Question 10.
[18] Long Form Notice at Questions 13, 19.
[19] Long Form Notice at Question 14.
[20] Long Form Notice at Questions 11-12.
[21] Long Form Notice at Question 12.
[22] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998) (*overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011)); *see also Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 412 (2d Cir. 1975) (*abrogated on other grounds by Menowitz v. Brown,* 991 F.2d 36 (2d Cir.1993)) ("[O]pting out of a class action, like the decision to participate in it, must be an individual decision."); *New York State Teamsters Council Health & Hosp. Fund v. Jazz Pharms., Inc.*, No. 20-MD-02966-RS, 2024 WL 5150632, at *5 (N.D. Cal. Dec. 16, 2024) ("Allowing *en masse* opt outs 'would infringe on the due process rights of the individual class members, who have the right to intelligently and individually choose whether to continue in a suit as class members.'" (quoting *Hanlon*, 150 F.3d 1024)).
[23] *See In re Aggrenox Antitrust Litig.*, 812 F. App'x 26, 28 (2d Cir. 2020) (affirming order approving settlement and discussing requirement that opt-out TPP acting on plan's behalf provide "a declaration from an authorized representative of the Plan attesting to the administrator's authority to opt the entity out of the class action settlement").

to submit their opt out requests via mail or email to Kroll.[24] Co-Lead Counsel will then electronically file a list of excluded class members.[25]

The Short Form Notice likewise provides information required by Rule 23(c)(2)(B).[26] It uses large, bold font to advise readers that they may be a part of the End-Payor Class and provides all necessary information: the basic claims in the litigation, the definition of the End-Payor Class, and the deadline to opt out.[27] In addition, the Short Form Notice provides contact information for Kroll and the case website.[28]

### B. The Proposed Manner of Notice Complies with Rule 23

Rule 23(c)(2)(B) requires that notice of a class action certified under Rule 23(b)(3) be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[29] "[F]or due process to be satisfied, not every class member need receive actual notice, as long as class counsel 'acted reasonably in selecting means likely to inform persons affected.'"[30] Providing notice through both direct mailed notice to TPPs and extensive digital advertising to consumers comports with Rule 23 where, as here, doing so is "the most practicable and feasible means of circulating notice to class

---

[24] Long Form Notice at Question 12.
[25] EPPs request leave to file the names of any consumer opt outs under seal to protect their privacy interest in their medical histories. *See In re Lidoderm Antitrust Litig.*, 3:14-md-02521-WHO (N.D. Cal. June 3, 2019), ECF 1077 (order granting motion to seal names of consumer class members in pharmaceutical antitrust litigation); *Offor v. Mercy Med. Ctr.*, 167 F. Supp. 3d 414, 445 (E.D.N.Y. 2016), *aff'd in part, vacated in part on other grounds, remanded*, 676 F. App'x 51 (2d Cir. 2017) ("Courts in this Circuit have repeatedly held that information protected by HIPAA is not subject to a First Amendment or common-law right of access and thus have sealed docket entries and redacted documents that contain such information.") (collecting cases).
[26] *See* Short Form Notice, attached as Exhibit 3 to the Wexler Decl.
[27] *See* Short Form Notice.
[28] *See* Short Form Notice.
[29] Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).
[30] *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting *Weigner v. New York*, 852 F.2d 646, 649 (2d Cir. 1988)).

members."[31] "Courts have routinely held that notice by publication in a periodical, on a website, or even at an appropriate physical location is sufficient to satisfy due process."[32] Similar notice plans—where TPPs receive direct mail notice and both TPPs and consumers receive digital notice—are regularly approved in class actions involving end-payors of pharmaceutical products.[33] Under EPPs' proposed plan, notice is expected to reach approximately 80% of the End-Payor Class on average 3.9 times.[34] Courts have repeatedly held that notice plans with similar reach satisfy Rule 23(c)(2)(B).[35]

EPPs' proposed Notice Plan will notify End-Payor Class members of the class certification order by two methods. First, EPPs propose directly mailing notice to TPPs via first-class mail,[36] and emailing notice to TPPs where e-mail addresses are available.[37] Kroll maintains a proprietary database containing contact information and addresses for more than 45,000 TPPs.[38] The database has been refined through its experience administering notice programs in other cases involving TPP class members. EPPs' proposal to send TPPs notice by both first-class

---

[31] *Elkind v. Revlon Consumer Prods. Corp.*, No. CV-142-484(JS)(AKT), 2017 WL 9480894, at *19 (E.D.N.Y. Mar. 9, 2017) (Tomlinson, M.J.).
[32] *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (citing *Hughes v. Kore of Ind. Enter., Inc.*, 731 F.3d 672, 676–77 (7th Cir. 2013); *Juris v. Inamed Corp.*, 685 F.3d 1294, 1319 (11th Cir. 2012)).
[33] *See In re Restasis*, 527 F. Supp. 3d at 273 (approving notice plan); *In re Aggrenox Antitrust Litig.*, No. 3:14 md-02516-SRU (D. Conn. Mar. 6, 2018), ECF 748-1 at 27-28 (motion) and ECF 766 at 7 (order approving notice plan); *In re Lidoderm Antitrust Litig.*, 3:14-md-02521-WHO (N.D. Cal. June 13, 2017), ECF 751 (order approving notice plan); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 1:14-md-02503-DJC (D. Mass. Apr. 14, 2017), ECF 532 at 18-21 (motion) and ECF 555 (order preliminarily approving notice plan); *In re Nexium (Esomeprazole) Antitrust Litig.*, No. 1:12-md-2409 (D. Mass. Dec. 3, 2013), ECF 466 at 4-5 (motion) and ECF 573 (order approving notice plan).
[34] Uhlfelder Decl. at ¶¶ 6, 42.
[35] *In re Restasis*, 527 F. Supp. 3d at 273 (approving notice plan with similar reach); *Elkind*, 2017 WL 9480894, at *19 (approving notice plan estimated to reach 70% of class members); *Macarz v. Transworld Sys., Inc.*, 201 F.R.D. 54, 64 (D. Conn. 2001) (granting motion for notice by publication where plan was "likely to reach a majority of the class members" while rejecting as too burdensome competing plan for notice by mail that "would result in only sixty percent of the class receiving notice").
[36] Uhlfelder Decl. at ¶¶ 14-18; *see also* Postcard Notice, attached as Exhibit 4 to the Wexler Decl.
[37] Uhlfelder Decl. at ¶¶ 11-13; *see also* Email Notice, attached as Exhibit 5 to the Wexler Decl.
[38] Uhfelder Decl. at ¶ 11.

mail and e-mail satisfies the requirements of Rule 23.[39] For any physical mailing returned as undeliverable, Kroll will conduct searches to obtain updated mailing information and resend notice.[40]

Second, EPPs propose providing notice to End-Payor Class members through the combination of an extensive publication and online media campaign. The Long Form Notice will also be published and posted for TPP and consumer End-Payor Class members on the dedicated case website.[41] Thus, the members of the End-Payor Class will receive notice through:

- An online media campaign, which will bring awareness of the lawsuit to the consumers most likely to be End-Payor Class members, using targeted digital banner ads, social media, and search advertising.

- The Short Form Notice will be used for the press release distributed to thousands of newsrooms via Cision PR Newswire's US1 Newsline.[42] It will also be used for the *People Magazine*, *El Nuevo Dia*, and *Primera Hora* advertisements that are part of the notice plan.

- The Long Form Notice will be available on the website dedicated to this case, to which traffic will be directed by the digital media campaign that includes banner ads, social media ads, and search engine ads, and will also be mailed upon request to End-Payor Class members.[43]

---

[39] *See Wolfert ex rel. Estate of Wolfert v. Transam. Home First, Inc.*, 439 F.3d 165, 176 (2d Cir. 2006) (observing that "use of first-class mail to send a required notice has regularly been upheld.").
[40] Uhlfelder Decl. at ¶ 18.
[41] Uhlfelder Decl. at ¶ 39.
[42] Uhlfelder Decl. at ¶ 38.
[43] Uhlfelder Decl. at ¶¶ 28 n. 9, 32, 39-40.

The coverage of this notice plan will be extensive, with the combination of notice through internet advertising and social media websites.[44] The Notice Plan includes targeted internet banner ads designed to reach both TPP and consumer members. Kroll will distribute approximately 150 million internet impressions through online display banner advertising, as well as social media websites such as Facebook, Instagram, and YouTube.[45] Banner ads will be geo-targeted to appear primarily in the Class States with a nominal percentage to run nationally to reach those who may have moved during or after the Class Period.[46] Ads will be served on targeted websites and across multiple devices, including desktop, laptop, tablet, and mobile devices.[47] These banner ads will include a link to the case website.[48] Additionally, Kroll will utilize Google search ads to reach people looking for information about the lawsuit. Kroll will also maintain toll-free telephone number that End-Payor Class members can use to obtain information about the case and their options, which will appear on all notices issued to End-Payor Class members and on the website.[49]

The dedicated website will be the central repository for information about this case, including the operative complaint, Defendant's answer, and the Court's class certification decision, along with other relevant filings. The website will be updated as the case proceeds.[50]

Finally, all notices will also be available in Spanish on the website, and a Spanish-language option will be available at the toll-free number run by Kroll.[51]

---

[44] Uhlfelder Decl. at ¶¶ 11-39.
[45] Uhlfelder Decl. at ¶¶ 28-37.
[46] Uhlfelder Decl. at ¶¶ 28-31, 33-36.
[47] Uhlfelder Decl. at ¶ 28 & n. 9.
[48] Uhlfelder Decl. at ¶ 28 & n. 9.
[49] Uhlfelder Decl. at ¶ 40; *see also* Long Form Notice, Short Form Notice, Postcard Notice, and Email Notice.
[50] Uhlfelder Decl. at ¶ 39.
[51] Uhlfelder Decl. at ¶¶ 27, 29, 33, 35, 40.

The EPPs' proposed plan, to be administered by a veteran in the administration of pharmaceutical antitrust class notice, is the best practicable under the circumstances. The plan's function is to apprise thousands of TPPs and consumers of the litigation and their rights, and it will serve that function. The Court can reasonably expect the plan to yield strong results in terms of class member awareness, while avoiding burdensome efforts unlikely to materially increase the plan's reach to the End-Payor Class.[52]

### C. Kroll Is Well-Qualified to Serve as Notice Administrator

Shortly after the Court certified the End-Payor Class, counsel for the EPPs sent a Request for Proposals to well-qualified and experienced notice administration firms seeking estimates on pricing and timing for dissemination of notice, as well as input concerning the most appropriate method for providing notice to the End-Payor Class. Counsel for EPPs reviewed the firms' respective submissions and engaged in follow-up inquiries. Based on that rigorous process and subject to this Court's approval, EPPs recommend Kroll serve as the notice administrator. Kroll has over 50 years of experience in the distribution of notice in large, nationwide class action litigations.[53] The company and its personnel have experience providing as notice administration services in numerous antitrust class actions, including cases involving pharmaceutical products, such as:

- *In re Asacol Antitrust Litig.*, Case No. 1:15-cv-12730 (D. Mass.)
- *In re Buspirone Antitrust Litig.,* Case Number: 1:01-md-01413 (S.D.N.Y.)
- *In re Cardizem CD Antitrust Litig.,* Case No. 2:99-md-01278 (E.D. Mich.)
- *In re Lidoderm Antitrust Litig.*, Case No. 3:14-md-02521 (N.D. Cal.),
- *In re: Nexium (Esomeprazole) Antitrust Litig.*, Case No. 1:12-md-02409 (D. Mass.)
- *In re Pharmaceutical Industry Average Wholesale Price Litig.,* Case No. 1:01-cv-12257, MDL No. 1456 (D. Mass.)

---

[52] *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM, 2010 WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010) ("In all cases the Court should strike an appropriate balance between protecting class members and making Rule 23 workable.") (quoting Manual for Complex Litigation (Second) § 30.211, at 223 (1985)).
[53] Uhlfelder Decl. at ¶ 4.

10

- *In re: Skelaxin (Metaxalone) Antitrust Litig.*, Case No. 1:12-md-02343 (E.D. Tenn.)
- *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, Case No. 14-md-02503 (D. Mass.)
- *In re Thalomid and Revlimid Antitrust Litig.*, Case No. 2:14-cv-06997 (D.N.J.).[54]

By successfully administering notice programs in similar cases, Kroll has developed expertise in implementing notice programs involving end-payors similar to the certified class here. The End-Payor Class will be well-served by having Kroll serve as notice administrator.

### D. A 30-Day Opt-Out Period is Adequate and Fair

EPPs propose a period of 30 days from the date of the issuance of notice to the date by which End-Payor Class members must submit or postmark a request to exclude themselves from the Class. The proposed notice directs End-Payor Class members that wish to exclude themselves from the Class to submit their exclusion request to Kroll by mail or email.

This proposed 30-day period provides members of the End Payor Class with sufficient time to decide whether to opt out. Courts have held that opt out periods of approximately 30 days satisfy due process, even when the case involves complex issues of law and fact.[55]

### III. THE COURT SHOULD ENTER AN ORDER FORMALLY APPOINTING CLASS REPRESENTATIVES AND CLASS COUNSEL.

Pursuant to Rule 23(g), and consistent with both the Court's May 20, 2014 order[56] appointing interim co-lead counsel and Magistrate Judge Aaron's report and recommendation, EPPs respectfully request that the Court formally appoint Steve D. Shadowen, Jayne A.

---

[54] Uhlfelder Decl. at ¶ 5.
[55] *See, e.g., In re Marsh & McLennan Cos., Inc. Sec. Litig.,* No. 04 Civ. 8144(CM), 2009 WL 5178546, at *13 (S.D.N.Y. Dec. 23, 2009) (approving a pre-certification settlement with a 30–day opt out period in a complex securities fraud class action case); *Rowe v. E.I. DuPont de Nemours & Co.,* Civil Nos. 06–1810 and 06–3080 (RMB/AMD), 2011 WL 3837106, at *7 (D.N.J. Aug. 26, 2011) (approving thirty-five day opt out period for class action settlement of water pollution claims over the objection of intervenors who claimed that longer notice was required because the "issues involved in the settlement are complex, thereby demanding highly specialized, scientific knowledge").
[56] ECF No. 46.

Goldstein, Kenneth A. Wexler, and Michael M. Buchman as Co-Lead Counsel. As Magistrate Judge Aaron found in his report and recommendation, the attorneys and their respective firms have the qualifications and experience to conduct this litigation on behalf of the End-Payor Class.[57] These firms, in collaboration with other class counsel, have been working efficiently and effectively to prosecute this case for more than a decade.

EPPs also respectfully request that the Court formally appoint 1199 SEIU-National Benefit Fund; A.F. of L. - A.G.C. Building Trades Welfare Plan; Fraternal Order of Police, Fort Lauderdale Lodge 31, Insurance Trust Fund; City of Providence, Rhode Island; Greater Metropolitan Hotel Employers-Employees Health and Welfare Fund; Local 17 Hospitality Benefit Fund; Man-U Service Contract Trust Fund; NECA-IBEW Welfare Trust Fund; New England Electrical Workers Benefit Fund; Painters District Council No. 30 Health and Welfare Fund; Plumbers & Pipefitters Local 178 Health & Welfare Trust Fund; and Teamsters Union Local 115 Health & Welfare Fund as representatives for the End-Payor Class. As Magistrate Judge Aaron found, the EPPs "have an interest in vigorously pursuing the claims of the [End-Payor Class] and their interests are not antagonistic to other members of the class."[58] EPPs were injured in the same manner and by the same conduct as other members of the End-Payor Class, and Takeda has not challenged EPPs' adequacy to represent the End-Payor Class.[59]

## IV. CONCLUSION

For the reasons set forth above, EPPs respectfully request that the Court approve the Notice Plan, authorize the distribution of notice to the End-Payor Class, appoint Kroll as notice

---

[57] ECF No. 763 at 34.
[58] ECF No. 763 at 34.
[59] *See generally* ECF No. 687.

12

administrator, and appoint Class Plaintiffs and Co-Lead Counsel. EPPs also respectfully request that the Court direct Kroll to issue notice to the End-Payor Class within 30 days of approval.

Dated: April 2, 2025　　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　s/ *Kenneth A. Wexler*
　　　　　　　　　　　　　　　　　　　　　　Kenneth A. Wexler*
　　　　　　　　　　　　　　　　　　　　　　Kara A. Elgersma
　　　　　　　　　　　　　　　　　　　　　　**WEXLER BOLEY & ELGERSMA LLP**
　　　　　　　　　　　　　　　　　　　　　　311 S. Wacker, Suite 5450
　　　　　　　　　　　　　　　　　　　　　　Chicago, IL 60606
　　　　　　　　　　　　　　　　　　　　　　Telephone: (312) 346-2222
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (312) 346-0022
　　　　　　　　　　　　　　　　　　　　　　kaw@wbe-llp.com
　　　　　　　　　　　　　　　　　　　　　　kae@wbe-llp.com
　　　　　　　　　　　　　　　　　　　　　　* Interim Co-Lead Counsel

　　　　　　　　　　　　　　　　　　　　　　Steve D. Shadowen*
　　　　　　　　　　　　　　　　　　　　　　Matthew C. Weiner
　　　　　　　　　　　　　　　　　　　　　　**HILLIARD & SHADOWEN LLP**
　　　　　　　　　　　　　　　　　　　　　　2407 S. Congress Ave., Suite E 122
　　　　　　　　　　　　　　　　　　　　　　Austin, TX 78704
　　　　　　　　　　　　　　　　　　　　　　Telephone: (855) 344-3298
　　　　　　　　　　　　　　　　　　　　　　steve@hilliardshadowenlaw.com
　　　　　　　　　　　　　　　　　　　　　　matt@hilliardshadowenlaw.com
　　　　　　　　　　　　　　　　　　　　　　*Interim Co-Lead Counsel

　　　　　　　　　　　　　　　　　　　　　　Jayne A. Goldstein *
　　　　　　　　　　　　　　　　　　　　　　**MILLER SHAH LLP**
　　　　　　　　　　　　　　　　　　　　　　1625 N. Commerce Parkway
　　　　　　　　　　　　　　　　　　　　　　Suite 320
　　　　　　　　　　　　　　　　　　　　　　Ft. Lauderdale, FL 33326
　　　　　　　　　　　　　　　　　　　　　　954-515-0123
　　　　　　　　　　　　　　　　　　　　　　Jgoldstein@sfmslaw.com
　　　　　　　　　　　　　　　　　　　　　　*Interim Co-Lead Counsel

　　　　　　　　　　　　　　　　　　　　　　Michael M. Buchman*
　　　　　　　　　　　　　　　　　　　　　　**MOTLEY RICE LLC**
　　　　　　　　　　　　　　　　　　　　　　600 Third Avenue, Suite 2101
　　　　　　　　　　　　　　　　　　　　　　New York, New York 10016
　　　　　　　　　　　　　　　　　　　　　　Telephone: (212) 577-0050
　　　　　　　　　　　　　　　　　　　　　　MBuchman@motleyrice.com
　　　　　　　　　　　　　　　　　　　　　　*Interim Co-Lead Counsel

## CERTIFICATE OF SERVICE

    I, Kenneth A. Wexler, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access this filing through the Court's system, and notice of this filing will be sent to these parties by operation of the Court's electronic filing system.

Dated: April 2, 2025                                                        Respectfully Submitted,

                                                                                       /s/ Kenneth A. Wexler
                                                                                       Kenneth A. Wexler